## Muncey v. Commonwealth.

(Decided November 4, 1932.)

L. D. LEWIS and C. W. NAPIER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Reversing.

Indicted for rape, the appellant, Clyde Muncey, was convicted of the offense of detaining a woman against her will with intent to have carnal knowledge of her, an offense included within the indictment, and sentenced to serve three years and a day in the penitentiary. He appeals.

The main ground for reversal is that the verdict is flagrantly against the evidence, a contention which the facts in this case certainly justify.

The prosecuting witness, Dora Stidham, testified that she was 19 years old, a student in the high school at Hyden, and that on the evening of September 11, 1931, whilst she and May Begley were on their way to a meeting of the B. Y. P. U. at the Baptist Church at Hyden, they met up with Carl Hamilton and the appellant. Hamilton was in his automobile, and appellant was riding with him. They too were students in the high school. According to the girls, the boys invited them to go for a ride, and they assented on condition that they ride no further than the bridge, a half mile away. According to the boys, the girls accosted them

and asked for a ride; the appellant testifying that a few days prior to this Dora Stidham had asked him to take her riding some time. At all events, the girls got into the machine and off it drove. It did not stop at the bridge, but kept on down the highway a piece and then turned off into a dirt road by McIntosh creek. There Hamilton stopped the car, and he and May Begley got out and disappeared into the darkness. The record is silent as to what they did. While they were gone, it is conceded that appellant broached the subject of sexual intercourse with Dora Stidham, and that she then declined to have it with him. Although the house of a close kinsman of Dora Stidham was less than thirty yards away from where the car was then parked, and although a Presbyterian Community Center was equally close, Dora Stidham made no effort to leave the boy who, she says, had thus insulted her or to seek refuge with friends. He testified that, while they were seated in the parked car, he hugged her and she made no objection. She does not deny this. After about five minutes, Hamilton and May Begley reappeared, and the car was then driven on. The party passed out of Leslie county into Knott county and then stopped. According to the prosecuting witness on direct examination, she was pushed out of the car by Hamilton and then pulled down the hillside by the appellant, who then, against her will and consent, had sexual intercourse with her.

Before taking up her cross-examination, we find that appellant testified that when the car stopped, Dora Stidham said to him, "Come on, Charger," got out of the car and went down the hill, where she freely and voluntarily had sexual intercourse with him. Neither Hamilton nor May Begley knew what went on down the hill, but Hamilton corroborated Muncey about Dora Stidham saying, "Come on, Charger," and May Begley, corroborated Dora Stidham about Hamilton pushing her out of the car. After the act of intercourse, all got back into the machine and drove around the better part of the remainder of the night. Although they passed through village after village, and mining camp after mining camp, and although they passed pedestrians and even a policeman, the girls and especially Dora Stidham made no outcry or complaint or any effort to be rescued from Dora Stidham's violator. Her sole excuse was that the car was going fast, and hence she made no out-

cry. Towards morning, the car ran into a cow, and that ended the party. Next day, they all returned to the school. The girls made no complaint to any one about this matter until the November term of court came round and after some talk had gotten about in the neighborhood concerning the party, started possibly, by some remark of the appellant.

Referring back now to the cross-examination of Dora Stidham, we find her testifying as follows:

"Q. When you got over into Knott County and Carl pulled you out and Clyde took you down the hill, did you hollow or make any noise? A. No.

"Q. Why did you not? A. I was afraid.

"Q. Did he offer to hurt you in any way? A. No.

"Q. Did he have any gun or pistol or knife? A. I never saw anything.

"Q. Did he threaten to hurt or injure you in any way? A. No, he did not.

"Q. Did he throw you on the ground? A. No.

"Q. How did you get down? A. I told him that I could not get on the ground, and he pulled his shirt off and I set down on it. * * *

"Q. When you set down on his shirt, did he pull up your dress? A. No.

"Q. Did you have on drawers or bloomers? A. I had on bloomers.

"Q. Did he unbutton your bloomers? A. They were not buttoned.

"Q. How were they fastened on you? A. They had an elastic band around the waist.

"Q. How did you get them off. A. I started to pull them down and he helped me. He pulled them down mostly."

Then follows other nauseating details which corroborate the conclusion to be drawn from the foregoing cross-examination that the act of intercourse was a voluntary one, entered into because of lust and not because of any fear or violence.

It is thus clear that an act of intercourse took place. No one denies this; all agree that such was the case. The only question was whether it was accompanied by force and violence or by putting Dora Stidham in fear or without her consent. Even the jury could not bring itself to that conclusion and so impose upon the appellant the severe punishment prescribed by the statute for rape. But the very element of violence or force which the jury found absent when considered in connection with the admitted intercourse is the foundation of the jury's finding that appellant forcibly detained Dora Stidham with intent to have carnal knowledge of her. It was no more present in the latter than in the former state of case, and the jury's finding in that regard is flagrantly against the evidence.

During the course of the trial, the appellant offered testimony to show specific acts of a lewd and lascivious character on the part of Dora Stidham with others shortly before the commission of the alleged offense for which the appellant was tried. This evidence was excluded by the trial court. It should not have been. In the case of Gravitt v. Commonwealth, 184 Ky. 429, 212 S. W. 430, after citing the cases of Brown v. Commonwealth, 102 Ky. 227, 43 S. W. 214, 19 Ky. Law Rep. 1174, and Stewart v. Commonwealth, 141 Ky. 522, 133 S. W. 202, to support the proposition of the admissibility of such evidence in rape cases, we held that such evidence was also admissible in prosecutions for forcibly detaining a woman against her will with intent to have carnal knowledge of her. The evidence is admissible on the issue of consent vel non on the part of the woman. The court erred in excluding the offered testimony.

For the reasons stated, the judgment is reversed with instructions to grant the appellant a new trial in conformity with this opinion.