# Grigsby v. Commonwealth.

April 20, 1945.

722

Napier & Napier for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Amos Grigsby appeals from a judgment sentencing him to imprisonment for life for the crime of rape.

We find no merit in the appellant's contention that he should have been acquitted by a peremptory instruction. It is sufficient to say that the prosecutrix testified the defendant had forced her into submission by drawing a large knife and threatening her life, and that he testified she had yielded in consideration of a promise to pay her and when he did not, she wrongfully charged him. There is substantial evidence corroborating the prosecutrix.

The jury were instructed in the usual form that they should find the defendant guilty if they believed from the evidence beyond a reasonable doubt that he "did unlawfully and feloniously have carnal knowledge of Alma Grigsby by force and against her will", and fix his punishment at death or at confinement in the state reformatory for life without parole or at confinement for life or for a term of not less than ten nor more than twenty years, in their discretion. It will be observed that the several penalties are as authorized by a 1944 amendment to the statute, KRS 435.090, Ch. 143, Acts of 1944. An instruction was given to find the defendant not guilty if upon the whole case the jury should have a reasonable doubt of the defendant having been proved guilty.

The appellant argues that it was the duty of the court to instruct the jury specifically to find him not guilty if they believed from the evidence that the prosecutrix had agreed to the act of intercourse for a consideration. This, he contends, is because he admitted the act but denied an essential element of the offense charged, namely, the compulsion, without which there was no crime. This is equivalent to the civil law plea of confession and avoidance. The premise of the appellant's argument is in accord with a general rule. Evitts v. Commonwealth, 257 Ky. 586, 78 S. W. 2d 798. On the other hand, we have laid down the rule that "if the instruction which submits the commonwealth's theory of the case is couched in such language as the ordinary layman, who sits upon the jury, can easily and readily understand and comprehend, and its negative completely and adequately cover the defense of the accused, it is unnecessary to give an affirmative instruction on the theory of the defendant." Duvall v. Commonwealth, 225 Ky. 827, 10 S. W. 2d 279, 281.

We have frequently alluded to the difficulty of applying these respective rules. It may be said that where the defendant proves facts or circumstances to excuse his act which otherwise would in and of itself be a crime, or the specific issue is one of criminal intent, such as where there is a claim of accident, self-defense, or mental capacity, ordinarily an affirmative instruction should be given. Cf. Duvall v. Commonwealth, supra; Morgan v. Commonwealth, 242 Ky. 116, 45 S. W. 2d 850; Luttrell v. Commonwealth, 250 Ky. 334, 63 S. W. 2d 292. But where the issue is as to a culpable overt act forming a constituent part of the crime, an affirmative defense instruction need not be given. Gibson v. Commonwealth, 204 Ky. 748, 265 S. W. 339. Here the issue was not whether the defendant had a felonious intent, but whether he did in fact use force or fear to accomplish his evil design—whether the admitted act of copulation was committed by consent or by constraint. It is true that in Neace v. Commonwealth, 62 S. W. 733, 23 Ky. Law Rep. 125, we ruled that upon another trial of a rape case an instruction should be given, in place of one which had been given, that the fact the prosecuting witness had a bad reputation as to chastity could not relieve the accused of guilt but there could be no conviction if she had consented to the act and was not constrained by force or fear to submit to it. But in

Webb v. Commonwealth, 223 Ky. 424, 3 S. W. 2d 1080, we held upon authority of other cases that it was not a reversible error to fail to give an affirmative instruction with respect to the alleged victim having voluntarily consented because the primary instructions required the jury to believe to the exclusion of a reasonable doubt that the act was committed forcibly and without the consent of the prosecutrix. The opinion of Neace v. Commonwealth, supra, is outside the general stream of the law pertaining to instructions and in conflict with later opinions upon the specific point. In this respect it should not be regarded as controlling, or at least as requiring in every instance that such an instruction be given.

On the trial the defendant wore the uniform of a soldier. Under persistent cross-examination by the Commonwealth's Attorney pro tempore, and over the equally persistent objections of the defendant's attorney, the accused was compelled to admit that he was a deserter from the army. The word itself was used in the interrogation. It was developed that the defendant had overstayed a furlough issued on January 1st previously, and had escaped from the guard house of an army camp on August 1st and come to his home in Perry County where the alleged crime was committed on August 24th. During the course of this examination the defendant maintained, or endeavored to explain, that he was not a deserter because he had never been convicted of desertion, and so was still a soldier in the army.

Again appears in this case a question as to which of two general rules is applicable.

Was this evidence competent under the rule that a defendant by becoming a witness waives some privileges, constitutional or of lesser degree, which he has as an accused person? The fact that he is charged with crime does not subject him to a different rule of cross-examination from that which applies to other witnesses. Pitts v. Commonwealth, 227 Ky. 792, 13 S. W. 2d 1053; Wharton, Criminal Evidence, Sec. 1323. By taking the witness stand, a defendant must submit to a searching cross-examination upon subjects or phases thereof introduced in his direct examination if they raise an inference unfavorable to the prosecution, or to examination upon incidental or collateral and apparently irrelevant matters which are calculated to test the credibility and the weight of his testimony. Of such character are

questions concerning his movements or conduct prior to the commission of the crime with which he is charged, as to his residence, associates, and business or employment, and in some instances as to some immoral conduct in his past life. Burdette v. Commonwealth, Ky., 18 S. W. 1011; Leslie v. Commonwealth, 42 S. W. 1095, 19 Ky. Law Rep. 1201. Even broader is the legitimacy of such inquiries if the accused on direct examination voluntarily opened up the matter. Thus, if he stated he had never been in trouble before, the Commonwealth has the right to inquire as to any specific involvement. Payne v. Commonwealth, 251 Ky. 776, 64 S. W. 2d 888. But the fact that the accused becomes a witness in his own behalf does not waive his right to object to procuring from him on cross-examination incompetent or inadmissible evidence. Roberts v. Commonwealth, 198 Ky. 838, 250 S. W. 115.

In these days of war there is a commendable regard for a member of the armed forces and the sacrifices he is making. The fact that the defendant was a soldier doubtless commended itself to the sympathy of the jury. Technically, of course, that ought not to be a factor, but in reality it is. At any rate, if that is the status of the defendant it may be legitimately disclosed as a part of his life's history. It might well be said, therefore, that appearing in the uniform of a soldier opened up the question of his right to be wearing it, or perhaps, more accurately in this instance, his worthiness to do so.

On the other hand, security against abuses of judicial inquisition stands guard against compelling any citizen to incriminate himself in an offense. This has sanction in the Bills of Rights, both federal and state, Federal Const. Amend. 5; Ky. Const. sec. 11, and, before them, in the long and victorious struggle of the common law. This privilege of immunity is consistently recognized in our jurisprudence, which prohibits proof or extracting admission of anything reflecting infamy upon him not pertinent to the particular case or any offense other than that with which the defendant stands accused by the indictment upon which he is being presently tried, with certain exceptions not relevant here. Howard v. Commonwealth, 110 Ky. 356, 61 S. W. 756; Welch v. Commonwealth, Ky., 108 S. W. 863; Morse v. Commonwealth, Ky., 111 S. W. 714; Romes v. Commonwealth, 164 Ky. 334, 175 S. W. 669; Wireman v. Commonwealth, 203 Ky. 57, 261 S. W. 862; Farley v. Commonwealth, 263

Ky. 769, 93 S. W. 2d 858; Peck v. Commonwealth, 286 Ky. 347, 150 S. W. 919. Our rules in this regard seem to be more strict than in some other jurisdictions. See Wharton, Cr. Ev., Secs. 1332, 1333. However, to affect credibility but not as substantive proof, Section 597 of the Civil Code of Practice, which is applicable also to the criminal practice, permits any witness to be impeached by evidence, either as part of his own cross-examination or the record, that he has been convicted of a felony. But this does not permit the Commonwealth to require the accused to admit or otherwise to prove that he has been merely charged with some particular crime, Logan v. Commonwealth, 174 Ky. 80, 191 S. W. 676, or has been convicted or is guilty of misdemeanor. Day v. Commonwealth, 256 Ky. 76, 75 S. W. 2d 741.

If the defendant had without right worn the uniform for the favorable effect it might have, the Commonwealth could expose him and show he had no right to wear it or had disgraced the uniform. Cf. State v. Morgan, 145 La. 585, 82 So. 711, where a negro defendant was wearing a Masonic emblem when he testified. But the Commonwealth did not claim the defendant had been convicted of a felony for the purpose of impeaching him as a witness, or that he had no right to be wearing the uniform. For aught that appears, the defendant not only had the right but it was his duty to do so. The majority of men and women of average intelligence—the class from which most juries are selected—are untrained in logical thinking, and are prone to draw illogical conclusions. They quite naturally believe that a person who is guilty of an offense of a heinous character is guilty of the crime for which he is being tried. Such evidence is unfair to the defendant. And it may create an indefinite multiplication of issues. Underhill's Criminal Evidence, Sec. 150; Raymond v. Commonwealth, 123 Ky. 368, 96 S. W. 515, 29 Ky. Law Rep. 785. We think it apparent that compelling the admission of the defendant that he was or may have been guilty of an offense under the military law, especially of being a deserter in time of war, was calculated to inflame or infuriate the jury against him, and that the cross-examination went beyond the range of fair and legitimate inquiry. Therefore, that a prejudicial error was committed. Of course, it follows that the argument of the Commonwealth's Attorney based upon the evidence was also erroneous.

728

Since there will probably be another trial, we take note that testimony was admitted without objection that the prosecuting witness had lived in adultery with another man, and perhaps with several men, while her husband was confined in the penitentiary at some undisclosed period. This was incompetent because of apparent remoteness. Many courts have expressed the opinion that no inference can be logically drawn that the prosecutrix voluntarily yielded to the defendant upon the particular occasion from the fact that she had previously submitted to the embraces of other men, hence that it is incompetent to prove any of them. Wharton's Criminal Evidence, Sec. 1373; Underhill's Criminal Evidence, Sec. 621. But we hold that evidence of particular acts of immorality with other men occurring shortly before the alleged rape is competent upon the idea that if she has made merchandise of her virtue, that fact will strongly militate against the probability that she did not consent in the case in hand. Stewart v. Commonwealth, 141 Ky. 522, 133 S. W. 202; Gravitt v. Commonwealth, 184 Ky. 429, 212 S. W. 430. Especially competent is evidence of voluntary sexual relations with the defendant prior to the occasion charged and testimony that the prosecutrix had a bad reputation in the community in which she lived for chastity, as circumstantial corroborative evidence on the issue of consent or as bearing upon the question of its probability. Wharton's Criminal Evidence, Secs. 340, 481; Underhill's Criminal Evidence, Secs. 618, 621; Lake v. Commonwealth, Ky., 104 S. W. 1003; Gravitt v. Commonwealth, 184 Ky. 429, 212 S. W. 430; Thomas v. Commonwealth, 188 Ky. 509, 222 S. W. 951; Gillispie v. Commonwealth, 212 Ky. 472, 279 S. W. 671; Adams v. Commonwealth, 219 Ky. 711, 294 S. W. 151; Muncey v. Commonwealth, 245 Ky. 664, 54 S. W. 2d 46. Of course, evidence of good character in rebuttal is also competent. Bowman v. Commonwealth, 146 Ky. 486, 143 S. W. 47. The court should admonish the jury as to the purpose of admitting such testimony.

The judgment is reversed.