## MERIDA v. COMMONWEALTH.

Court of Appeals of Kentucky.

Nov. 9, 1951.

J. B. Campbell, C. B. Pope, Barbourville, for appellant.

A. E. Funk, Atty. Gen., Guy L. Dickinson, Asst. Atty. Gen., for appellee.

SIMS, Justice.

Appellant, James Merida, was convicted of burning a two-room dwelling house in December 1950, belonging to his wife's sister, Cleo Merida, and his punishment was fixed at confinement in the penitentiary for a term of two years. In seeking to reverse the judgment he insists: (a) incompetent evidence was admitted over his objections; (b) the instructions did not give his theory of the case.

The proof shows appellant had not been getting along with his wife and her family. At the time the house burned his wife had left him, and his father-in-law, Jimmy Broughton, who lived near appellant, was threatening to kill him. The record shows appellant was in an "upscutter" with his father-in-law and his brothers-in-law, which we interpret as meaning there was a general row between them and him.

The fire occurred about 11:30 A.M. Appellant testified he was cooking dinner on a wood-burning stove which had a broken leg and had previously fallen over and almost set fire to the house. The pipe from the stove ran into a "well tie" as a flue and the house had a tar paper roof. The hearth in the other room was narrow and "sunken down", and he was burning poles in the grate.

Appellant testified he received word from a young nephew that Jimmy Broughton had a gun and was going to kill him. Thereupon, he grabbed his shotgun and his rifle and left his dinner on the stove and went down to the creek through the fields to avoid Jimmy. When 200 or 300 yards from the house appellant saw it burning. He did not return to it but denied he set it on fire before leaving.

Wiley Mays testified he saw appellant with his guns about 30 yards from the burning house and said to him; "Jim, ain't you done the wrong thing, everybody will be 'again' you". To which appellant replied, "You're all 'again' me, anyhow." Tolman Mills testified that he saw appellant on the day of the fire and the latter said, "Yes, I burnt it up. They was trying to get everything I had. I give it to them, but I give it to them in ashes". Milton Jackson testified he saw appellant on the afternoon of the fire and he said, "I've burned the house, every God damned thing I've got. Hurry and get the money for me. I'm looking for Henry and Lester to follow me". (The money mentioned was $5 for a gun accused had sold.) Appellant admitted seeing and talking to these witnesses, but denied telling them he burned the house, or that he did actually burn it.

■ Complaint is made of testimony introduced by the Commonwealth that appellant was shooting about the house just before it burned and seven chickens were found in the yard after the fire which had been shot and killed. While this evidence was of no great importance and had but little bearing upon the case, we think it was admissible to show intent, motive or malice on the part of appellant at the time it is alleged he wilfully and maliciously burned the house of his sister-in-law. Rather than discuss the rule we merely cite the reader to Kirby v. Com., 206 Ky. 535, 267 S.W. 1094, and Bullington v. Com., 193 Ky. 529, 236 S.W. 961.

Appellant insists the court erred in not giving an instruction setting out his theory of the case, the fire was accidental, citing Jones v. Com., 239 Ky. 110, 38 S.W.2d 971.

There, the accused admitted that while drunk he accidentally set fire to the house while illegally searching for whiskey. We said the court should have given an instruction on the accidental firing of the house since the jury might think that the words, "unlawfully, wilfully and maliciously" in the given instruction made accused criminally responsible for the fire although he accidentally set it while drunk.

■ While the accused is entitled to have his theory of the case submitted in the instructions, the rule as stated in Grigsby v. Com., 299 Ky. 721, 187 S.W.2d 259, 261, 159 A.L.R. 196, is: "If the instruction which submits the commonwealth's theory of the case is couched in such language as the ordinary layman, who sits upon the jury, can easily and readily understand and comprehend, and its negative completely and adequately cover the defense of the accused, it is unnecessary to give an affirmative instruction on the theory of the defendant". Also see Duvall v. Com., 225 Ky. 827, 10 S.W.2d 279; Abshire v. Com., 281 Ky. 470, 136 S.W.2d 567.

■ Perhaps it would have been better had the court instructed on the accidental burning of the house, but the second instruction defines " 'wilfully' as used in these instructions means intentionally, not accidentally or involuntarily". We feel certain the jury readily understood that if appellant accidentally set fire to the house or did not burn it "feloniously or wilfully" he could not be convicted. Therefore, it was not prejudicial error to fail to instruct affirmatively on accused's theory of the case since the instructions, taken as a whole, incorporated it.

■ The evidence was conflicting but the jury accepted the testimony of the witnesses for the Commonwealth rather than that of accused and his witnesses and it was ample to sustain the verdict. The instructions, although not in the best form, submitted the issues to the jury so it could not have failed to understand appellant's contention that the fire was accidental rather than maliciously set by him.

Therefore, the judgment is affirmed.