Tom JONES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 11, 1960.

R. B. Bertram, Monticello, Ky., Hile Pritchard, Albany, for appellant.

Jo M. Ferguson, Atty. Gen., Paul E. Hayes and Edw. L. Fossett, Asst. Attys. Gen., for appellee.

STANLEY, Commissioner.

The appellant, Tom Jones, killed Haskel "Bee" Daniel on Sunday, December 21, 1958. Jones was convicted of voluntary manslaughter and his punishment fixed at eight years and one day's imprisonment.

There had been some trouble between the parties at a polling place on the previous November election, at which time Jones had an open knife in his hand. During the first part of December Jones asked his brother-in-law to sharpen his knife "good and sharp," saying, according to the witness, that "it was going into Bee Daniel's heart, or something like that." It was a new four blade Boker knife. On the afternoon of the homicide, the parties were at a community store. Daniel was drunk. Jones drove away first in a truck, and Daniel a few minutes later, driving behind him. The defendant testified he saw Daniel was following him and turned off onto a narrow road to escape him but Daniel came on. Jones had a cousin and her children with him. He stopped in an uncle's driveway to let some of the children out of his truck. Notwithstanding the defendant's claim that Daniel had been following him, there is evidence that at this point Daniel's car was in front of Jones' truck. A witness related that Jones got out of his truck, walked toward Daniel's car with an open knife in his hand; Daniel got out of his car staggering, and Jones said, "Bee, you God damn son-of-a-bitch, I am going to kill you." Daniel staggered back to his car and got a screw driver out of it. Jones followed him and repeated his threat. Daniel replied, "No, Tom, you ain't going to kill me," adding, "I ain't ready to die." Then Jones struck at him with his knife. Daniel fell back and there was a scuffle, during which Jones reached over Daniel's shoulder and stabbed him in the back. He then cut him on the face and stabbed him in his chest. According to this eyewitness, Daniel did not use the screw driver as a weapon. Jones ran after Daniel, who picked up a rock and threw it at him, striking Jones in his ear. About the time Daniel fell, Jones said, "I guess you are dead now." Daniel died at a hospital a few hours afterward. His doctor testified he had four different and distinct wounds. An X-ray revealed that "his heart had been stabbed into."

The defendant's story is that on the afternoon of the homicide he had some collateral members of his family in his car and had stopped at the home of one of them when he noticed Daniel closely following. He drove into the yard of his uncle's home where some of his passengers got out. Daniel parked his car, got out and hit him in the head with a screw driver, "nearly tearing an ear off." He retreated and Daniel pursued him and struck him again. Thereupon, during the scuffle he got out his knife and cut Daniel in self-defense. There is ample corroboration of the fact that the defendant's ear had been struck or cut.

It is obvious, we think, that there is no merit in the appellant's contention that the verdict is "against both the law and the evidence."

At the conclusion of the evidence for the defense, the Commonwealth recalled the defendant for further cross-examination. The defendant was asked if within six months before Daniel's death, on numerous occasions when Mrs. Daniel was alone, he, the defendant, had (1) got in her automobile while it was parked in Albany and asked her to leave her husband and go away with him, and (2) had gone to her home "and tried to make love to Mrs. Daniel and tried to hug and kiss her and make improper advances toward her and tried to get her to leave her hus-

band and go with you." The defendant answered each question, "No, sir." Objections to the questions and a motion that they be stricken from the record were overruled.

This examination was followed by the introduction in rebuttal of Mrs. Wanda Daniel, the widow of the deceased, over the defendant's objection on the ground that the testimony would be in chief. The witness was permitted to testify categorically that the defendant had made the requests and improper advances as described in the questions which had been asked him.

The appellant argues that the above testimony was incompetent. As to his own interrogation, he submits that it was as to a matter about which he had not testified on direct examination and was inadmissible also because it implied guilt of another offense. He further insists that the interrogation was improper and the evidence was inadmissible because its character was such that it prejudiced the jury against him.

■ The defendant was open to cross-examination, the same as any other witness. Grigsby v. Commonwealth, 299 Ky. 721, 187 S.W.2d 259, 159 A.L.R. 196; Hayton v. Commonwealth, Ky., 332 S.W.2d 537. While the subject was not brought up in his direct examination, we think the interrogation was within the scope of proper inquiry. The defendant had claimed that he was not the aggressor in the homicide and it was competent to ask him a question which sought to elicit an admission of facts that would have tended to lessen the probative effect of his testimony concerning that factor. Motive is the source and spring of criminal action and proof of any pertinent fact or circumstance from which its existence may be inferred is al-

ways competent, even though it may tend to prove another distinct offense. Cassell v. Commonwealth, 248 Ky. 579, 59 S.W.2d 544. Here the inquiry sought to obtain an admission which would have thrown light on the question of who was the aggressor or which would have afforded an inference of motive and a state of feeling on the part of the accused toward the deceased that may have contributed to influence him to kill Daniel. Robertson's Kentucky Criminal Law, §§ 510, 511, 512; Frost v. Commonwealth, 258 Ky. 709, 81 S.W.2d 583; Taylor v. Commonwealth, 266 Ky. 325, 98 S.W.2d 928; Cawthorn v. Commonwealth, 300 Ky. 641, 189 S.W.2d 970.

■ Though the evidence of Mrs. Daniel might have been properly introduced in chief, it was within the court's discretion to permit its introduction at the time insofar as its competency to prove motive is concerned. McClain v. Commonwealth, 284 Ky. 359, 144 S.W.2d 816. Her testimony was admissible in rebuttal as being an impeachment of the defendant's testimony concerning the matter.

■ The court should probably have admonished the jury as to the evidence concerning the collateral matter which tended to prove motive. It is generally the duty of the court to give such an admonition as to evidence tending to impeach the defendant as a witness. But the defendant did not request an admonition limiting the purposes of the evidence. He thereby waived his right to have the jury so admonished. Adams v. Commonwealth, Ky., 261 S.W.2d 811. In any event, the omission of an admonition cannot be regarded as prejudicial error. Allen v. Commonwealth, 302 Ky. 546, 195 S.W.2d 96.

The judgment is affirmed.