Greta JACOBS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

April 22, 1977.

Dale B. Mitchell, Somerset, for appellant.

Robert F. Stephens, Atty. Gen., Robert William Hensley, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

This appeal results from a conviction for possession of a controlled substance. The evidence developed at trial indicates that several officers of the Pulaski County sheriff's office went to the residence of appellant, Greta Jacobs, to execute a search warrant and there found appellant and two other individuals, Don Todd and Robert Turner. The search of the premises resulted in the discovery of two vials of a liquid, later analyzed as phenmetrazine, which were found in plain view in a bathroom. Needles, syringes and various other articles were also seized, the majority of which items were found in places indicating them to have been hidden. Appellant emphatically denied that any of these items belonged to her and attempted to connect them to Turner, who it was shown had frequently stayed overnight at her home.

Appellant was subsequently convicted by the Pulaski Circuit Court of the offense of possession of phenmetrazine, a Schedule II nonnarcotic controlled substance under KRS 218A.070(3)(c). Three arguments are presented for the reversal of this conviction.

Appellant's first argument stems from the wording of KRS 218A.070, which she argues controls only those drugs which are shown not to have been removed from the schedule of controlled substances at the time of the alleged offense, and also only that quantity of phenmetrazine which is shown to hold a potential for abuse associated with a stimulant effect on the central nervous system, so that in the failure of the Commonwealth to prove the drug had not been so rescheduled and that appellant possessed such a quantity, she was entitled to a

directed verdict of acquittal. Applying this same line of reasoning, appellant further contends the jury should have been instructed that before they could find her guilty of possession of a controlled substance as designated by the statute, they were required to find she possessed such a quantity as specified above and to further find that phenmetrazine had not been rescheduled at the time the offense was alleged to have been committed. After having carefully considered the statute in question, we do not so construe its language and must disagree with appellant's contentions. The troublesome section, KRS 218A.070, reads in part as follows:

"Unless otherwise rescheduled by regulation of the [state board of health] the controlled substances listed in this section are included in schedule II:

.   .   .   .   .

"(3) Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system:

.   .   .   .   .

"(c) Phenmetrazine and its salts;

.   .   .   .   ."

As we read this language, the phrase "having a potential for abuse associated with a stimulant effect on the central nervous system" modifies "substances" rather than "quantity." As such, the language referred to is a phrase of description rather than, as appellant suggests, of limitation. The quantity of the drug possessed is therefore irrelevant under the statute, so that evidence of possession of any amount of the controlled substance is sufficient to withstand a motion for a directed verdict of acquittal. In regard to appellant's contention that the Commonwealth was required to prove the drug had not been rescheduled at the time of the alleged offense, we are of the opinion that since an enactment of the legislature is presumed valid and effective unless clearly shown otherwise, *Commonwealth v. Robinson*, 192 Ky. 374, 233 S.W.

791 (1921), it was incumbent on the defendant to raise the issue by introducing evidence indicating the drug had been rescheduled; and in her failure to do so we conclude her not entitled to the directed verdict of acquittal. Having so reached these conclusions, we similarly conclude there to have been no error in the court's instructions to the jury.

Appellant alleges as her second assignment of error that the trial court erred in refusing to allow a defense witness, James Roysden, to testify because, although subject to the rule of separation of witnesses invoked by defense counsel pursuant to RCr 9.48, Roysden had been present in the courtroom for a short time during the trial. RCr 9.48 provides as follows:

"If either a defendant or the commonwealth requests it, the judge may exclude from the hearing or trial any witness of the adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses. This provision shall not apply to the parties to the proceeding."

The purpose of this rule is, obviously, to prevent a prospective witness from adjusting his testimony to conform to that which he hears during the interrogation of other witnesses. We have uniformly construed it as giving to the trial judge broad discretion in the matter of permitting or refusing to permit the testimony of a witness who has violated the rule of separation, and have refused to intervene in such matters except in cases where that discretion is found to have been abused. *Stone v. Commonwealth*, Ky., 418 S.W.2d 646 (1967); *Moore v. Commonwealth*, Ky., 323 S.W.2d 577 (1959). Strict compliance with the rule is not mandatory, *Sanders v. Drane*, Ky., 432 S.W.2d 54 (1968), and, taking a practical approach to the problem presented here, we do not feel the purpose sought to be achieved by RCr 9.48 required the exclusion of Roysden's testimony. The record in the present case indicates Roysden was in the Pulaski County jail at the beginning of the proceedings and explains his presence in the courtroom as being due to the jailer, while

Roysden was still in his custody, for some reason directing him to sit in the courtroom audience. The record further shows counsel for the defendant was unaware of Roysden's appearance at the proceedings because he was seated facing the bench, his back to the audience, preoccupied with the testimony of a witness for the Commonwealth. The testimony Roysden sought to give was placed in the record by avowal and indicated Turner had admitted to Roysden that the controlled substance which appellant was charged with possessing did not belong to her, but to Turner. Clearly, this testimony was crucial to appellant's defense, and given the circumstances under which the rule of separation of witnesses was violated, we consider the trial court to have committed substantial error to the prejudice of the appellant in its refusing to permit Roysden to testify.

■ Since the error discussed above renders it necessary to reverse this case for a new trial, we feel compelled to advise by this opinion that we consider the conduct and closing argument of the Commonwealth's Attorney to have been highly improper and the sentence imposed by the trial court to be in error. The transcript of evidence is replete with objectionable statements and the injection of false issues by the prosecutor and several of the Commonwealth's witnesses, and it is plainly evident from this record that the prosecutor was attempting to induce the jury to believe the worst of the appellant by making her appear to be involved in the trafficking of a controlled substance. The means employed in this effort included introducing into evidence the drug paraphernalia seized during the search, displaying it prominently on the lip of the jury box, and repeatedly making reference to these articles during the presentation of evidence and in the closing argument, in which the prosecutor reminded the jury of its "obligation . . . to the citizenry to keep this poison out of their system", asked them to "send a loud message, and never fear that what you do here will be heard . . . to the boundaries of this county and beyond", and indicated that a "young person on this stuff will live

a living death." We soundly condemned this variety of prosecutorial misconduct in *Coates v. Commonwealth*, Ky., 469 S.W.2d 346 (1971), when we indicated that such action deprived the appellant therein of the fair jury trial to which he was entitled. Similarly, in *Harness v. Commonwealth*, Ky., 475 S.W.2d 485 (1971), we instructed that although a Commonwealth's Attorney is allowed reasonable latitude in argument to persuade jurors the matter should not be dealt with lightly, he may not so inflame the jury that it solely out of passion and prejudice will be led to return a verdict of guilty. In the instant case, although the court sustained several of the objections made by defense counsel and admonished the jury concerning the prosecutor's actions, we view the total effect of this unnecessary conduct to be such that the trial court's attempted corrections were insufficient to cure the damage done.

■ We must further point out that since there is no indication that appellant had been previously convicted of any offense under the Controlled Substances Act, KRS Chapter 218A, the penalty imposed by the trial court cannot stand. That penalty, of one year's confinement in the county jail and a fine of $500, is the maximum punishment designated for subsequent offenders of the controlled substances statutes by KRS 218A.990(6)(g). The proper penalty here is designated by KRS 218A.990(6)(a):

"(a) Any person found guilty of possession of any controlled substance pursuant to this subsection shall for a first offense, be ordered to a facility designated by the Commissioner of the Department of Mental Health where a program of treatment and rehabilitation not to exceed one year in duration shall be prescribed. . ."

The judgment of conviction is therefore reversed for a new trial in compliance with this opinion.

All concur.