**COMMONWEALTH of Kentucky, Appellant,**

**v.**

**Stella Marie COLLINS, Appellee (Two Cases.)**

**Stella Marie COLLINS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

**Nos. 95–SC–157–MR, 95–SC–203–MR and 95–SC–204–MR.**

Supreme Court of Kentucky.

Aug. 29, 1996.

Rehearing Denied Dec. 19, 1996.

Brian P. Halloran, Newport, Mark Harris Woloshin, Newport, for Stella Marie Collins.

A.B. Chandler, III, Attorney General, Sharon Kay Hilborn, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Roy Kimberly Snell, Special Assistant Attorney General, LaGrange, for Commonwealth of Kentucky.

## MEMORANDUM OPINION OF THE COURT

This appeal arises from the judgment of conviction of Stella Marie Collins for intentional murder and first-degree criminal abuse, for which she received twenty-one years' imprisonment. Appellant appeals to this Court as a matter of right.

The Commonwealth also appeals to this Court, not in the form of a cross-appeal to Appellant's action, but as two separate appeals eventually consolidated into one and designated to be heard with Appellant's action herein. The appeal by the Commonwealth, which concerns the punishment phase and for which we remand this case for resentencing, will be discussed below, after disposition of the issues as related to Appellant's appeal, which relates to the guilt/innocence phase.

*95-SC-203-MR*

Appellant was charged with the criminal abuse, between June 6, 1991 and June 24, 1991, and subsequent murder, on or about June 24, 1991, of her stepson, Otis Wayne Collins, Jr. ("Wayne Junior"), who suffered from an advanced stage of Duchenne's Muscular Dystrophy. The disease weakens the large muscles around the hips and shoulders and progresses to other muscles, including the heart and lungs, with an eventual prognosis being death, usually in the mid to late teenage years. At the time of his death, Wayne Junior was one day shy of his twelfth birthday.

In early June of 1991, Wayne Junior was permitted visitation with his father, Otis Wayne Collins, Sr. ("Wayne Senior") and Appellant, and stayed at the Henry County trailer the couple shared with their two-year-old son, Daniel. During this time, Teresa Devore, a friend of the couple, frequently stayed at the Collins' residence and would sometimes lend assistance in the care of Wayne Junior. Devore proved to be a key prosecution witness, as she testified to instances of abuse dealt to Wayne Junior by Appellant. For instance, Devore stated that Appellant would force Wayne Junior to crawl around inside the trailer for two hours at a time, two to three times a day, claiming that such "exercise" had been prescribed by the doctor, and that if he refused to do what she wanted, Appellant would spank the child, sometimes with a fly swatter.

Devore further testified that on June 23, 1991, the day before the child died, Appellant called her to the trailer because Wayne Junior was misbehaving and Appellant needed someone to help her calm down. Devore stated that at the trailer, she observed Appellant take the belt from her bathrobe and wrap it around Wayne Junior's neck, commenting that this would quiet the child. Devore also noted that later that evening, Appellant beat the boy about the head, chest and face, after Wayne Junior had pinched

her. Devore testified that after this outburst, there were no more fights that night, and that everyone eventually went to sleep. However, the next morning, Devore was awakened by Appellant, who had noticed that Wayne Junior's breathing had become irregular and he had mucous-type fluids coming from his mouth. Devore stated that she fell back to sleep, but was later again awakened, this time by Wayne Senior, who began screaming upon finding the boy not breathing.

Attempts to revive the child proved to no avail and on June 24, 1991, Wayne Junior was pronounced dead in the Emergency Room of Carrollton Hospital. An autopsy revealed that Wayne Junior suffered a horizontal, linear injury to the carotid artery and airway, along with various abrasions and contusions, and, of course, the advanced Muscular Dystrophy. The cause of death was determined to be traumatic asphyxia.

Although Devore's testimony was valuable to the Commonwealth's case, she was, by her own admission, not wholly an innocent observer to the mistreatment of Wayne Junior. She stated that she too, at times, became short with the boy, sometimes even striking him. Devore also admitted to forcing the child, on one occasion, to drink his own urine, something she had initially blamed on Appellant. It is Appellant's contention, thus, that based upon Devore's character and her penchant for lying, she was not a credible witness and her testimony should not have been given much weight in the determination of Appellant's guilt. Appellant raises five issues on appeal, the first of which discussed herein more specifically involves Devore's role as a witness.

At issue is a diary kept by Devore during her stay at the Collins' residence which Appellant contends should have been admitted at trial in its entirety. According to Appellant, this diary contained, with some degree of particularity, an accounting of the daily activities and attitudes of Devore. In it, Devore made disparaging remarks about Wayne Junior, referring to him as a "hateful brat," and writing, at one point, "He needs to die if he don't want to do his [exercises]." Appellant notes that conspicuously absent from the diary was any mention of abuse of Wayne Junior by Appellant or any statements regarding the child's death. Appellant asserts that while the diary was shown, on cross examination, to have been written totally contemporaneously with Devore's presence with the Collins family between June 6, 1991 and June 24, 1991, the diary was not permitted at trial to be completely and totally allowed for the jury's consideration.

Appellant asserts that as the prosecution questioned Devore extensively regarding her diary, the defense should have been allowed to present the remainder of the diary upon cross-examination of Devore pursuant to the rule of completeness. In sum, Appellant asserts that the Commonwealth's examination of Devore opened the door for the admission of the entire diary, in that once a party elicits part of a statement or writing from a witness, the opposing party may introduce all other portions of that writing which are relevant to the case. *Crane v. Commonwealth,* Ky., 833 S.W.2d 813 (1992); *Tarrance v. Commonwealth,* Ky., 521 S.W.2d 521 (1975); *Winn v. Commonwealth,* Ky., 303 S.W.2d 275 (1957); *Meadors v. Commonwealth,* 281 Ky. 622, 136 S.W.2d 1066 (1940). Appellant adds that cross-examination of the government's star witness is extremely important in ensuring that the criminal defendant receives a fair trial, and that there is a presumption which favors free cross-examination on possible bias, motive, ability to perceive and remember, and general character for truthfulness. *United States v. Phelps,* 733 F.2d 1464 (11th Cir.1984). Appellant also cites to *Grigsby v. Commonwealth,* 299 Ky. 721, 725, 187 S.W.2d 259, 262 (1945), for the proposition that a witness, by taking the stand, "must submit to a searching cross-examination upon subjects or phases thereof introduced in his direct examination ... or to examination upon incidental or collateral and apparently irrelevant matters which are calculated to test the credibility and the weight of his testimony." *See also Wonn v. Commonwealth,* Ky.App., 606 S.W.2d 169 (1980).

Appellant contends that the excluded sections of the diary clearly establish, in Devore's own words, her lack of veracity, as well as her absence of character and her

compulsion for lying. In particular, Appellant notes that the diary contained details of Devore's sexual promiscuity, drug abuse, and use of a racial slur. As such, and because the diary also shed light upon Devore's thought processes and mental state, Appellant asserts, and contrary to the trial court's ruling, that these entries were clearly relevant to Devore's testimony at trial, KRE 401, and went to the character of Devore, her credibility as a witness, and the weight that the jury would give her testimony. KRE 404, KRE 607. Appellant concludes that this was all the more important given the fact that in order to convict Appellant, the jury had to believe Devore.

Appellant also makes much of the fact that the jury requested the diary shortly after it had been submitted the case for deliberation. What the jury received, according to Appellant, was an "edited" copy, with whole passages actually cut out by the trial judge, which, Appellant asserts, indicated to jurors that something was being hidden from them. Appellant's point, herein, seems to be that the obvious nature of the sanitization of the diary in some way weighed against Appellant. Appellant asserts that a motion in limine, prior to trial, by the prosecution, would have provided ample time for the defense to clean up the diary for the jury—although, as Appellant points out, this would still have been objectionable—without it appearing that the defense had hidden parts of the diary through such blatant exclusion. Appellant concludes that the presumption of harm caused by errors in regard to the admission or exclusion of evidence in a jury trial, *Crawford v. United States,* 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465 (1909), could not be overcome in this matter as the Commonwealth's case rested on Devore's testimony and her credibility with the jury.

To begin, we do not feel that the defense's trial strategy was hindered or jeopardized by the trial court's decision not to include the entirety of the diary. Those portions which were admitted, including that which was read by defense counsel during opening arguments, did indeed portray Devore as a sexually promiscuous drug abuser who had ambivalent, often hateful, feelings toward the victim. Moreover, a review of the trial proceedings reveals that much of what defense counsel unsuccessfully sought to introduce via the portions of the diary ruled inadmissible came in anyway. For example, defense counsel was able, on cross-examination, to elicit from Devore that she had more than one boyfriend and that she had sexual relations with one of these boyfriends at Appellant's residence on the night of Wayne Junior's death. We agree with the Commonwealth, and ultimately with the trial court, that specific details of these sexual encounters were not relevant as to the issue of whether or not Appellant abused and murdered Wayne Junior. Likewise, Devore's description of a minority with a politically incorrect slang term was irrelevant to the case, but, rather, if introduced along with the other excluded evidence, would have undoubtedly reached an impermissibly cumulative level.

Moreover, we do not feel that the use of the diary in this matter invokes the rule of completeness. KRE 106; *Crane, supra.* The objective of that doctrine "is to prevent a misleading impression as a result of an incomplete reproduction of a statement or document." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 1.20 at 48 (3d ed. 1993). In evaluating the evidence which was, in fact, admitted relating to the character and actions of Devore, we do not believe that the jury was mislead by the trial court's refusal to admit the diary in its entirety. The completeness doctrine is based upon the notion of fairness—namely, whether the meaning of the included portion is altered by the excluded portion. *Meadors, supra,* 136 S.W.2d at 1068; *see also* Lawson, *supra,* at 48–49. Here, as the Commonwealth points out, the excluded portions relating to specific details of Devore's sexual conduct and her use of the racial term do not refute or change the meaning of those portions which were admitted. Finally, we are not convinced, as Appellant would have us believe, that the jury placed the blame upon the defense for hiding something in those edited portions of the diary. As such, we hold that Appellant's argument herein does not warrant reversal.

■ Appellant next argues that the trial court erred in not granting a directed verdict as there was insufficient evidence to support either the murder or the abuse verdict. Appellant contends that the Commonwealth's case rested on supposition, innuendo, and circumstantial evidence. In order to sustain a conviction on such proof, Appellant argues that the evidence "must be so unequivocal and incriminating as to exclude every reasonable hypothesis of innocence," *Hays v. Commonwealth,* 270 Ky. 561, 563–564, 110 S.W.2d 279 (1937), and, that, likewise, the evidence "must point unerringly to the accused's guilt and it must do more than create a suspicion of guilt." *Bullock v. Commonwealth,* 249 Ky. 1, 7, 60 S.W.2d 108, 110 (1933) (citation omitted). Appellant asserts that both convictions herein must be reversed in that the sum of the evidence presented by the Commonwealth amounted to no more than a mere suspicion of guilt, and did not meet that burden of beyond a reasonable doubt. Appellant postulates that she was charged with Wayne Junior's murder only because she had the misfortune of being the first one awake on the morning of the child's death, and that she was candid enough to admit this fact to police. Appellant maintains that there was no physical evidence to tie her to the murder, and that none of the witnesses, except for Devore, testified to ever seeing Appellant lay a hand on Wayne Junior.

Again, Appellant focuses on what she believes to be the impropriety in allowing Devore's testimony to be given any credence. According to Appellant, through the testimony of Devore, it was shown that Devore abused drugs, was hospitalized for mental conditions, and violated an active probation. In addition, Appellant points out that Devore, in that part of her diary which was admitted, indicated her strong dislike for Wayne Junior, and noted, on one occasion, to being under the influence of codeine while charged to watch the boy. Appellant points out that Devore testified herself to hitting the child, and adds that Devore and Wayne Senior were in the trailer with Appellant at the time of Wayne Junior's death.

■ First, we stress that Appellant is incorrect to imply that a different standard of review is required in evaluating whether or not a directed verdict should have been granted in cases involving circumstantial evidence, for this Court clearly stated, in *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3, 4 (1983), that "[s]uch is not correct." Rather, "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991); *see also Sawhill, supra.* Clearly, it was not unreasonable in this matter for the jury to find guilt. While Appellant takes issue with Devore's role as a key prosecution witness, such argument does not warrant taking this case away from the jury, as "[t]he credibility and the weight to be given the testimony are questions for the jury exclusively." *Sawhill, supra,* at 5. Moreover, there was testimony from other witnesses beside Devore which tied Appellant to the crimes charged and which, "draw[ing] all fair and reasonable inferences from the evidence in favor of the Commonwealth," *Benham, supra,* at 187, justified sending this case to the jury.

■ Appellant next argues that the trial court erred by not severing the charges of murder and criminal abuse for trial purposes. RCr 9.16; RCr 9.14. Appellant cites to *Romans v. Commonwealth,* Ky., 547 S.W.2d 128, 131 (1977), for the proposition that "RCr 9.16 requires separate trials if it appears that the defendant will be prejudiced by a joinder. 'Prejudice' is a relative term. In the context of a criminal proceeding it can mean only that which is unnecessarily or unreasonably hurtful." Appellant contends that the Commonwealth's evidence as to the murder charge was so weak that it was bootstrapped to the charge of criminal abuse in order to gain a conviction which would otherwise not have been possible. *Gregory v. United States,* 369 F.2d 185 (D.C.Cir.1966).

In addition, Appellant argues that joint trial on the charges prevented Appellant from testifying on the abuse charge because she did not also want to open herself up to testifying on the murder charge. *Cross v. United States,* 335 F.2d 987 (D.C.Cir.1964);

*Drew v. United States,* 331 F.2d 85 (D.C.Cir. 1964); *Rigsby v. Commonwealth,* Ky., 495 S.W.2d 795, 798 (1973) ("It is true that prejudice may occur where an accused wishes to testify on only one of two joint offenses which are clearly distinct in time, place and evidence."). Moreover, Appellant asserts that the jury used the evidence relating to the criminal abuse to form an inference of murder. Appellant concludes that as evidence of the two crimes charged would not have been admissible in separate trials, pursuant to the limits placed upon evidence of other crimes to prove criminal disposition, the trial of the two charges together resulted in prejudice to Appellant. Appellant maintains that there is always the fear that the jury may accumulate the evidence of the various crimes charged and find guilt when, if such proof were considered separately, it would not so find. Appellant adds that the Commonwealth's reliance on *Schambon v. Commonwealth,* Ky., 821 S.W.2d 804 (1991), is misguided because, unlike in that case, in the instant matter, the charge of murder involved a separate act or transaction which was in no way connected to the abuse charged to Appellant and her co-defendants, Devore and Wayne Senior.

We disagree with Appellant, both as to the application of *Schambon* in this matter, and with regard to Appellant's contention that there was a lack of connection between the abuse charge and the murder charge. First, in *Schambon,* we held it was permissible to join charges of animal cruelty to those of sexual abuse, as the former charges reflected upon the state of mind of the defendants. In so doing, we held that "[t]he decision to join or sever is within the sound discretion of the trial court and an exercise of that discretion will not be disturbed unless clear abuse and prejudice are shown." *Id.* at 809. Likewise, we feel that herein, the trial court was correct to try the abuse and murder charges together. "A significant factor in identifying such prejudice is the extent to which evidence of one offense would be admissible in a trial of the other offense." *Rearick v. Commonwealth,* Ky., 858 S.W.2d 185, 187 (1993). In the case at bar, the evidence relating to the abuse charge would have been admissible in a trial on the murder charge, not, as Appellant mischaracterizes it, as proof of criminal disposition, but, rather, as proof of a similar course of conduct or common scheme or plan. *Rearick, supra.*

In addition, this Court has held that joinder is proper where the crimes are closely related in character, circumstance and time, *Cannon v. Commonwealth,* Ky., 777 S.W.2d 591 (1989); *Seay v. Commonwealth,* Ky., 609 S.W.2d 128 (1981). We disagree with Appellant's contention that the proof relating to the murder charge constituted a separate transaction distinct in time, place and manner from the abuse charge. For example, as the Commonwealth points out, these crimes occurred within a span of about a week, as the indictment accused Appellant of committing murder on or about June 24, 1991, and of abusing Wayne Junior between June 6, 1991 and June 24, 1991. Moreover, evidence offered at trial indicated that the acts at issue took place at the Collins' residence and that there was a substantial degree of similarity between the way in which Wayne Junior was abused and the manner in which he was killed. As such, we hold that Appellant was not prejudiced by joinder of the charges in this case.

■ Appellant next argues that a separation of witnesses order was violated when the investigating officer, Detective Carey Duncan, who was also subject to this order, approached defense witnesses after the trial had begun and informed them as to what certain prosecution witnesses were to testify. Appellant contends that such action, whether intentional or unintentional, directly influenced the testimony of these defense witnesses, and notes that, in particular, two such witnesses, John Davidson and Mark Rayborn, changed their stories after having spoken to Duncan. Appellant asserts that Duncan's violation of this order caused the defense to lose a key element to its case relating to the way in which Wayne Junior was carried by EMS personnel from the trailer which may have contributed to his neck injury. Appellant asserts that if the rule of separation of witnesses is to have any effect "to prevent a prospective witness from adjusting his testimony to conform to that which he hears during the interrogation of

other witnesses," *Jacobs v. Commonwealth*, Ky., 551 S.W.2d 223, 225 (1977), the type of behavior exhibited by Duncan herein cannot be tolerated. Appellant concludes that Duncan's actions subverted "[t]he purpose of the rule [which] is to elicit the truth, unveil the false and promote the ends of justice." *Moore v. Commonwealth*, Ky., 323 S.W.2d 577 (1959).

First, there seems to be some disparity as to what Duncan actually told these witnesses. Appellant contends that Duncan's statement was "to the effect" of to what certain EMS personnel would testify, yet the Commonwealth maintains that, based upon Duncan's testimony at a hearing held concerning this matter, he merely asked the witnesses, at the Commonwealth's request, how Wayne Junior had been removed from the trailer. This difference in interpretation notwithstanding, while Appellant is correct to cite to *Jacobs*, a review of the facts at issue does not reveal that the objective of the separation of witnesses rule articulated therein was circumvented by Duncan. While Appellant asserts that these defense witnesses changed their testimony after having spoken to Duncan, there is no real proof offered to substantiate this claim. For one matter, Rayburn did not even testify at trial. Moreover, the trial court properly evaluated whether or not prejudice occurred to Appellant as a result of Duncan's actions. "A hearing is required by a trial judge to determine whether the violation [of the separation order] caused prejudice to the defendant in addition to determining what the witness had heard or the content of his proposed testimony." *Henson v. Commonwealth*, Ky., 812 S.W.2d 718, 723 (1991); *see also Ballard v. Commonwealth*, Ky., 743 S.W.2d 21, 21–22 (1988). We have traditionally afforded "the trial judge broad discretion in the matter of permitting or refusing to permit the testimony of a witness who has violated the rule of separation, and have refused to intervene in such matters except in cases where that discretion is found to have been abused." *Jacobs, supra*, at 225; *see also Rice v. Commonwealth*, Ky., 387 S.W.2d 4, 6–7 (1965). Upon holding a hearing in this matter, the trial court concluded that there was no violation of this rule, and a review of the proceedings below does not reveal any abuse of discretion in arriving at such a determination. Furthermore, Appellant was free to, and in fact did, examine and cross-examine witnesses regarding the defense's theory of the case and how, or if, this was affected by Duncan's actions, with the credibility of such witnesses always a factor to be considered by the jury in its evaluation of the case. While what transpired herein might have amounted to a technical violation of the separation order, it is not enough to warrant reversal in this matter, for "[s]trict compliance with the rule [on separation of witnesses] is not mandatory...." *Jacobs, supra*, at 225.

Finally, Appellant argues that the trial court erred in allowing jurors to pose questions to witnesses by approaching the bench and making a verbal inquiry, when KRE 614(c) mandates that questions by jurors be submitted in writing to the judge. Appellant contends that the trial court's practice herein placed defense counsel in an awkward and prejudicial position. In particular, Appellant notes that there were several instances wherein a juror approached the bench—in front of the attorneys, the witness, and the rest of the jury panel—and sought to pose a question. Appellant asserts that such a situation left defense counsel in the precarious circumstance of either objecting to the juror's question in earshot of the jury and at the risk of alienating the jury, or not objecting and allowing an objectionable question to be submitted. Appellant points out that defense counsel did subtly, and, in at least one instance, in writing, object to jurors' questions, but that there was no certainty that the jury was not nonetheless made aware of such objection. Appellant argues that KRE 614 was designed to prevent such a predicament, and that by not following this rule, the trial court erred to the prejudice of Appellant.

Again, we defer to the discretion of the trial court in determining that the juror's questions were properly submitted. As in the previous issue, while there might have been a technical violation herein, as these questions were not submitted in writing, if any error occurred, it was harmless. A review of the record does not indicate that the

contents of the jurors' questions were particularly objectionable, and, in some instances, the questions were either not posed to the witness or were not answered by the witness. In addition, the trial court admonished the jury that questions asked by jurors were subject to the same evidentiary determinations of relevancy, admissibility and competency as questions posed by the attorneys, and that if certain juror questions were prohibited by the trial, such an objection was not to enter into the jury's deliberation of the case. In the absence of any prejudicial question being asked, no error warranting reversal resulted herein.

For the foregoing reasons, the judgement of conviction is affirmed.

*95-SC-157-MR and 95-SC-204-MR*

As stated above, the Commonwealth also appeals in this matter, arguing that the trial court erred in allowing Collins, ("Appellee" in this action) to waive jury sentencing pursuant to the court's recommendation of a minimum sentence. The events surrounding this issue involve a conference held at the bench, after the jury returned a guilty verdict in the case, during which the trial court offered Appellee minimum sentences—twenty to twenty-five years for the murder conviction, and five to seven years for the criminal abuse conviction, to be served concurrently—in exchange for her waiver of a sentencing phase. The Commonwealth objected to such waiver and the trial court, at first, appeared to agree that the Commonwealth had a right to jury sentencing, and set the sentencing phase to begin on February 10, 1995. However, when the court reconvened, Appellee moved to waive the jury sentencing. After another discussion at the bench, the trial court, over the Commonwealth's objection, granted the motion, and fixed Appellee's sentence at twenty-one years for murder and seven years for criminal abuse, to be served concurrently.

On February 21, 1995, the Commonwealth filed a notice of appeal with the trial court. The Commonwealth then sought, from this Court, pursuant to CR 76.33, a Motion for Intermediate Relief to Stay the March 3, 1995 sentencing. A hearing was held and this motion was denied. Final sentencing was held and judgment entered on March 3, 1995. The Commonwealth filed an additional notice of appeal which was subsequently consolidated with its original appeal and then later designated to be heard with Collins' appeal. The Commonwealth points out that Appellee is presently free on appeal bond.

The Commonwealth argues that it is entitled to a jury-recommended sentence, as expressly mandated both statutorily and in the criminal rules. KRS 532.055; RCr 9.26; RCr 9.84. In particular, the Commonwealth cites to RCr 9.26(1) which provides that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the Commonwealth." The Commonwealth stresses that, in this matter, it did not give such consent. *See Commonwealth v. Corey,* Ky., 826 S.W.2d 319, 321 (1992) ("RCr 9.26 seems to confer an absolute right to a jury trial upon either the defendant or the Commonwealth."); *see also Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (upholding the validity of Federal Rule of Criminal Procedure 23(a) which is identical to RCr 9.26). It is the Commonwealth's contention herein that the term "jury trial" encompasses both phases of Kentucky's bifurcated trial procedure. In support, the Commonwealth cites to RCr 9.84(1), which states:

> When the jury returns a verdict of guilty it shall fix the degree of the offense and the penalty except that the court may fix the penalty (a) in cases where the penalty is fixed by law and (b) in cases where the court is otherwise authorized by law to fix the penalty.

The Commonwealth asserts that neither of the two exceptions contained within this rule apply herein as the sentence is neither fixed in this case, nor is the trial court authorized by law—for example, pursuant to KRS 532.055(4), when the jury cannot reach an agreement as to sentencing, *Commonwealth v. Hubbard,* Ky., 777 S.W.2d 882 (1989)—to prevent the jury from recommending a sentence.

Moreover, the Commonwealth points out that even in light of a guilty plea, this Court has afforded the Commonwealth the right to request jury sentencing, a right which may not be waived by the defendant. *Lycans v. Commonwealth,* Ky., 562 S.W.2d 303 (1978); *Hayes v. Commonwealth,* Ky., 470 S.W.2d 601 (1971). In addition, the Commonwealth relies upon *Commonwealth v. Howard,* Ky., 287 S.W.2d 926 (1956), wherein the High Court held that a plea of guilty does not prevent the Commonwealth from presenting evidence bearing on guilt or innocence to a jury for purposes of sentencing. As such, the Commonwealth reasons that if it is entitled to jury sentencing in light of a guilty plea, it is certainly entitled to jury sentencing after a jury has found a defendant guilty. The Commonwealth concludes that as the jury completed its duty in the guilt phase and reached a verdict, the trial court is required to conduct a sentencing phase before the jury. KRS 532.055(2); RCr 9.84.

In addition, the Commonwealth asserts that the conduct of the trial court in assuring Appellee minimum sentences to run concurrently in exchange for a waiver of the sentencing phase was tantamount to plea bargaining, which is outside the court's discretion. *Corey, supra,* at 321; *see also Commonwealth v. Reyes,* Ky., 764 S.W.2d 62, 64 (1989). The Commonwealth seeks to have this case remanded and a sentencing hearing ordered, but notes that nothing in KRS 532.055 requires submitting the issue of punishment to the same jury panel which determined Appellee's guilt. *Williamson v. Commonwealth,* Ky., 767 S.W.2d 323 (1989); *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672 (1985). Accordingly, the Commonwealth suggests that any jury sentencing hearing occurring on remand follow the language relating to such proceedings contained in *Boone v. Commonwealth,* Ky., 821 S.W.2d 813, 814–815 (1992).

While the Commonwealth's arguments are persuasive herein, we are more influenced in the disposition of this issue by the rationale expressed by this Court in *Commonwealth v. Johnson,* Ky., 910 S.W.2d 229 (1995). At issue in *Johnson* was whether, upon an unconditional guilty plea, the Commonwealth was entitled to present its case for punishment to a jury for its verdict prior to imposition of the final judgment. In determining, in that capital case, that the Commonwealth was—in the absence of the agreement of all parties—so entitled, we noted that while jury sentencing was not constitutionally required, such a proceeding was available to the Commonwealth pursuant to certain of the Rules of Criminal Procedure, in particular, RCr 9.26 and RCr 9.84. More specifically, we stated:

> To construe RCr 9.84(2) as undermining the Commonwealth's right to insist upon a jury as secured by RCr 9.26 vastly exceeds the language used. If this Court, in exercise of its rule-making power, had desired to modify the plainly stated provision of RCr 9.26, it could have done so far more efficiently than by the indirect method urged by appellee.

*Id.* at 231.

While *Johnson* was a death penalty case, it would follow that the rationale contained therein would be no different in a non-capital case.

We therefore remand this case for resentencing consistent with this opinion.

STEPHENS, C.J., and BAKER, GRAVES, KING, LAMBERT and WINTERSHEIMER, JJ., concur.

STUMBO, J., concurs in part and dissents in part by separate opinion.

STUMBO, Justice, concurring in part and dissenting in part.

Respectfully, I must dissent from that part of the majority opinion which holds that RCr 9.26(1) prevents the waiver of jury sentencing by the defendant over the objection of the Commonwealth. My views are set forth in the dissent to *Commonwealth v. Johnson,* Ky., 910 S.W.2d 229, 232 (1995).