Major CRANE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 91–SC–122–MR.

Supreme Court of Kentucky.

May 14, 1992.

Rehearing Denied Aug. 28, 1992.

Frank W. Heft, Jr., Chief Appellate Defender of the Jefferson Dist. Public Defender, Larry D. Simon, Appellate Public Advocate, Daniel T. Goyette, Jefferson Dist. Public Defender, Louisville, for appellant.

Chris Gorman, Atty. Gen., Ian G. Sonego, John S. Gillig, Asst. Attys. Gen., Criminal Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

This is a direct appeal from a judgment of the Jefferson Circuit Court sentencing the appellant, Major Crane, to thirty years' imprisonment following his conviction by a jury for wanton murder. A liquor store clerk was shot in the head and killed, apparently during an attempted robbery.

A forty-year sentence imposed on appellant following an earlier trial was set aside by the federal courts on constitutional procedural grounds.[1] There is no contention that those original errors were repeated at the second trial.

The first two of the five claims of error raised in this appeal involve the admission of an out-of-court statement of an accom-

---

1. *Crane v. Commonwealth,* Ky., 690 S.W.2d 753 (1985), reversed, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); on remand, Ky., 726 S.W.2d 302 (1987); federal habeas corpus relief granted, *Crane v. Sowders,* 708 F.Supp. 163 (W.D.Ky. 1989), 889 F.2d 715 (6th Cir.1989).

plice implicating appellant in an unrelated shooting and a statement to the court by the attorney for said accomplice during the latter's guilty plea to said shooting. Next, the appellant argues that it was error for the trial judge not to instruct the jury on the lesser-included offenses of second-degree manslaughter and reckless homicide. Fourth, it is claimed that the trial judge was disqualified from presiding over the second trial. Finally, it is argued that reversible error was committed when a deputy clerk in the jury's presence referred to the fact that the appellant had appealed the order of the juvenile court transferring jurisdiction of his case to the circuit court. We will address these issues in the order listed.

On August 14, 1981, one week after the liquor store clerk was found murdered, the appellant, then age sixteen, was taken into custody by the police after he was identified as an accomplice in an unrelated service station burglary. After being advised of his rights, Crane agreed to talk to the police. Over the course of the next two and one-half to three hours, during which he was again advised of his rights, he admitted involvement in several different robberies and shootings, including the Keg Liquor Store, a hardware store, and one in which the victim was a jogger. Crane identified one Gregory Powell as his accomplice in the robbery of a woman of her purse at gunpoint in the Big A Shopping Center and in the shooting of the jogger. Although in his pretrial statement to the police Crane claimed it was he who took the purse and also admitted that he shot the jogger, later, when he testified during his trial, he recanted his admissions and claimed that Powell took the purse and shot the jogger.

In rebuttal, the Commonwealth sought to call Powell to testify that Crane shot the jogger as Powell had stated in a pretrial statement to the police. On advice of counsel, however, Powell declined to testify, invoking his Fifth Amendment privilege. Thereupon, the Commonwealth moved the trial court to declare Powell unavailable to testify and to admit Powell's previous statement under Federal Rule of Evidence (FRE) 804(b)(3) (adopted by *Crawley v. Commonwealth*, Ky., 568 S.W.2d 927 (1978)), as a statement against penal interest, inasmuch as Powell had implicated himself at least as an accomplice. The trial court overruled the defense objection and admitted Powell's statement.

■ Crane insists that the admission of Powell's out-of-court statement denied appellant his right of confrontation and cross-examination under Section 11 of the Kentucky Constitution and violated his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution. We disagree and find no error.

In the first place, it was Crane, not the Commonwealth, who injected into this trial the entire matter of the unrelated shooting of the jogger. Of course, the appellant did so as a matter of strategy to help cast doubt on his now recanted confession, arguing that since it was false about his shooting the jogger it could be equally false about his killing the liquor store clerk.

When Crane himself testified about the collateral shooting of the jogger by Powell, he opened the door for the Commonwealth to offer evidence in rebuttal. As such, the admission of Powell's out-of-court statement was for a non-hearsay purpose; i.e., to corroborate appellant's own confession, not to prove *per se* who actually shot the jogger. Moreover, the statement of Powell was not introduced as substantive evidence against appellant for the murder of the liquor store clerk, the only crime charged in the trial in progress.

The situation here is remarkably similar to that in the case of *Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985). There the United States Supreme Court held that Street's rights under the Confrontation Clause were not violated by the introduction of the confession of an accomplice for the non-hearsay purpose of rebutting Street's testimony that his own confession was coercively derived from the accomplice's statement. In that case the Court stated in part (471 U.S. at 413, 414, 415, 105 S.Ct. at 2081, 2082):

This case is significantly different from the Court's previous Confrontation Clause cases such as *Ohio v. Roberts,* 448 U.S. 56 [100 S.Ct. 2531, 65 L.Ed.2d 597] (1980), *Dutton v. Evans,* 400 U.S. 74 [91 S.Ct. 210, 27 L.Ed.2d 213] (1970), and *Bruton v. United States,* 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968). Confrontation Clause issues arose in *Roberts* and *Dutton* because hearsay evidence was admitted as substantive evidence against the defendants. And in *Bruton,* the Court considered whether a co-defendant's confession, which was inadmissible hearsay as to Bruton, could be admitted into evidence accompanied by a limiting instruction.

In this case, by contrast, the prosecutor did not introduce Peele's out-of-court confession to prove the truth of Peele's assertions.

\* \* \* \* \* \*

The *nonhearsay* aspect of Peele's confession—not to prove what happened at the murder scene but to prove what happened when respondent confessed—raises no Confrontation Clause concerns.

\* \* \* \* \* \*

When respondent testified that his confession was a coerced imitation, therefore, the focus turned to the State's ability to rebut respondent's testimony. Had the prosecutor been denied the opportunity to present Peele's confession in rebuttal so as to enable the jury to make the relevant comparison, the jury would have been impeded in its task of evaluating the truth of respondent's testimony and handicapped in weighing the reliability of his confession. Such a result would have been at odds with the Confrontation Clause's very mission—to advance *"the accuracy of the truth-determining process in criminal trials."*

Moreover, unlike the situation in *Bruton,* there were no alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence. [Citations and footnotes omitted. Emphasis added.]

In our opinion, the trial court's decision to admit Powell's out-of-court statement was not clearly erroneous either as to his unavailability or as to the statement's reliability.

As a part of his effort to repudiate his confession and to show that it was false in numerous particulars, Crane sought to prove that he had confessed to other unrelated crimes (such as the assault on the jogger and the taking of the lady's purse) for which others and not he had been actually prosecuted and convicted. In this connection, the defense called a deputy circuit court clerk and had her testify as to various indictments against Gregory Powell and others, reading the charges and quoting from the court records as to convictions and sentences. This tactic was pursued regarding the shooting of the jogger and the jury was informed that appellant had not even been indicted for this crime, notwithstanding his confession thereto. Rather, it was shown that Powell, pursuant to a plea agreement with the Commonwealth, entered a guilty plea to first-degree assault of the jogger. With the evidence as to the unrelated assault of the jogger left in this posture, the appellant, of course, cast doubt with the jury as to Powell's out-of-court statement naming appellant as the shooter as well as casting doubt on appellant's own confession that he had done the shooting. At the same time, this evidence bolstered appellant's trial testimony wherein he recanted the confession and pointed to Powell as the trigger-man in the jogging case.

As rebuttal, the prosecutor on cross-examination of the records clerk asked her to read statements of Powell's attorney made to the judge as a part of Powell's guilty plea, along with some of the colloquy between Powell and the judge. The gist of the statements was that Powell was not admitting necessarily that he had fired the weapon at the jogger, but rather that he was only admitting that he was a participant in the offense along with others.

Appellant objected to this evidence as hearsay but the trial judge overruled the objection on the grounds that the excerpts

from the colloquy were part of an official record.

■ Once again it is clear that appellant opened the door for the admission of this evidence. This Court has repeatedly held that, when the defendant only introduces part of a document or record, the Commonwealth can introduce other portions to refute that offered by the defendant. *Price v. Commonwealth*, 294 Ky. 708, 172 S.W.2d 576 (1943); *Winn v. Commonwealth*, Ky., 303 S.W.2d 275 (1957); *Mitchell v. Commonwealth*, Ky., 781 S.W.2d 510 (1989).

Since the appellant chose to introduce the issue of Powell's involvement in the assault on the jogger and introduced the record of Powell's guilty plea thereto, it was entirely proper for the trial court to permit the Commonwealth to show that said guilty plea did not contain an admission by Powell that he, in fact, fired the shot.

Appellant's third contention is that the trial court erred in failing to instruct the jury on second-degree manslaughter and reckless homicide as lesser-included offenses to wanton murder. We do not agree.

■ While the trial court is required to instruct on lesser-included offenses to a crime charged, this duty only applies when it is "justified by" or "supported by" the evidence. *Grissom v. Commonwealth*, Ky., 468 S.W.2d 263 (1971); *Pace v. Commonwealth*, Ky., 561 S.W.2d 664 (1978); *Martin v. Commonwealth*, Ky., 571 S.W.2d 613 (1978); *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985).

■ The evidence of record in this case from the medical examiner was that the liquor store clerk died from a single gunshot wound in the middle portion of the back of his head. The .32 caliber bullet apparently entered the skull in a straight line trajectory approximately 5′8″ to 5′9″ above the floor. In his pretrial tape-recorded statement, the appellant said:

Then I ran in there and I told them, "this is a hold-up." I told him it's a hold-up and then the man, his feet looked like it was a button or something that his feet touched on the floor and then sirens and stuff started going off and I just shot up in the air. I shot, I shot the gun up in the air, I ran out....

[Police officer] then I asked, "How were you holding the gun? You said you shot in the air over there." Mr. Crane replies: "I shot like this because I couldn't shoot it like this. *I started to shoot it like this but it jacks my arm back. So I shot it like this, straight up in the air.*" [Emphasis added.]

Contrary to appellant's statement, the location of the gunshot wound and the path of the bullet do not support any inference that appellant was shooting "straight up in the air." As a matter of law, the shot had to have been fired into the victim intentionally or, at the very least, under circumstances indicating extreme indifference to the value of human life. This shot was undisputedly fired during the commission of an armed robbery of a store clerk. The circumstances belie and preclude any inference of mere wanton or reckless conduct on the part of the robber-killer. In *Kruse v. Commonwealth*, Ky., 704 S.W.2d 192, 193 (1985), we held that a defendant who intentionally participates in an armed robbery may be convicted of wanton murder even if he did not personally cause the death of the homicide victim because "the intent to commit the underlying felony supplies the element of intent to murder, although the killing was not originally contemplated."

In *Combs v. Commonwealth*, Ky., 652 S.W.2d 859 (1983), we affirmed a first-degree wanton endangerment conviction in spite of the defendant's objection to the trial court's refusal to instruct on the lesser-included offense of second-degree wanton endangerment. The principal element distinguishing first-degree from second-degree wanton endangerment is the identical element distinguishing wanton murder from second-degree manslaughter; i.e., extreme indifference to human life. In that case, the defendant, Combs, in resisting or avoiding arrest for shoplifting, fired a pistol six times, twice in the proximity of a bystander, once at the arresting officer,

and once in the direction of a second by-stander. We stated in part at page 861:

[E]vidence which will sustain a conviction for first-degree wanton endangerment is also sufficient to sustain a conviction for second-degree wanton endangerment. That is not to say, however, that an instruction on the lesser included offense must always be given. Our cases have now established that an instruction on a lesser included offense is not required unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but yet conclude that he is guilty of a lesser included offense. Applying this standard to the evidence of this case, we hold that a reasonable juror could not doubt that Combs acted wantonly under circumstances which manifested an extreme indifference to the value of human life and, likewise, a reasonable juror could not doubt that his conduct created a substantial danger of death or serious physical injury to another person. [Citations omitted.]

Here, appellant's pretrial statement does *not* establish that he was not shooting at the store clerk but merely that the pistol jerked his arm so that he shot higher than he intended. Shooting at a store clerk during the course of an armed robbery simply because an alarm sounded or the clerk moved his foot toward a floor alarm button clearly manifests extreme indifference to the value of human life as a matter of law. Accordingly, the trial judge was correct in declining to instruct on lesser-included offenses.

■ Appellant's next claim of error stems from the trial judge's denial of a defense motion that he recuse himself from appellant's second trial. The motion was predicated upon a comment allegedly made by the trial judge to the victim's family during the sentencing phase of the first trial. One of the defense lawyers at that trial stated that he heard the trial judge make an off-the-record comment from the bench in response to a question from family members as to why the appellant could not get a longer sentence. Although the lawyer testified at a hearing on the recusal motion that he couldn't remember exactly what was said, he thought it sounded like the judge said he could not consider the death penalty even if he wanted to because of the limits of the law.

A second defense attorney from the first trial submitted an affidavit that the judge stated in court before sentencing, in response to a letter from some of the family of the victim, that he would impose the death penalty on the appellant if he could, but that the law did not allow him to do so. No objection was made of record.

The trial court held a hearing on this motion, gave his recollection of the sentencing, and answered questions of counsel. He indicated he did not recall making the alleged statement and that he could not see himself making the statement attributed to him.

A family member had a tape recording made at the sentencing hearing of the first trial; however, upon its being played at the hearing it was mostly inaudible. Following the hearing, the judge denied the motion for him to recuse himself.

■ It is undisputed that the appellant did not raise any such issue on his appeals from the judgment and sentence entered after the first trial. Nor did he file a motion pursuant to CR 59.05 to vacate the final judgment or to disqualify the trial judge. CR 59.05 is applicable to criminal cases. *See Silverburg v. Commonwealth*, Ky., 587 S.W.2d 241 (1979). A motion to require a trial judge to vacate the bench must be made before he proceeds with the cause. *Bailey v. Bailey*, Ky., 474 S.W.2d 389 (1971). Also, the original motion to disqualify which was filed on August 22, 1990, was not supported by an affidavit. Such an affidavit was not filed until September 27, 1990, during the evidentiary hearing. Such an unsupported motion is deficient. *See Miller v. Miller*, Ky., 459 S.W.2d 81 (1970) and *Jackson v. Commonwealth*, Ky., 806 S.W.2d 643 (1991).

■ In addition, if Crane had filed a proper motion as required by K.R.S. 26A.020, he could have required the matter to be transmitted to the Chief Justice for

an immediate ruling, thereby avoiding what he now claims was an unfair trial because of a presumptively biased judge. *Jackson, supra.* When trial counsel is aware of an issue and fails to request appropriate relief on ·a timely basis, the matter will not be considered plain error for reversal on appeal. *West v. Commonwealth,* Ky., 780 S.W.2d 600 (1989); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

In our opinion, there was no error committed by the trial court in denying the motion for him to recuse.

■■■■ Finally, appellant argues that it was error for the trial court not to declare a mistrial when the jury heard a reference to the fact that appellant had appealed the order transferring his case from juvenile court to circuit court.

During his questioning of the deputy circuit court clerk concerning unrelated charges against Gregory Powell and others, all as set out above under the second issue, appellant had the clerk read from court records regarding charges in the shooting of the jogger. On cross-examination, the prosecutor asked the clerk to read from a motion by Crane in that record which reflected that he was a co-defendant therein. The motion was to quash an order for Crane's personal attendance at Powell's trial because he (Crane) had appealed the juvenile court's order transferring his case to circuit court. Of course, this evidence tended to rebut Crane's testimony that he was not even charged in the case of the assault on the jogger. The trial court overruled the objection of Crane and denied a motion for an admonition or to grant a mistrial. The trial judge observed that the reference was so slight that the jury probably did not even become aware that a reference had been made to appeal rights. The court also stated that the document read from related to matters brought up by appellant's trial counsel during direct examination and also specifically rebutted appellant's claims that he was not involved in or charged in the shooting of the jogger. We believe the trial court ruled correctly.

Such a brief and indirect reference concerning appeal rights was certainly not substantial enough to violate Crane's rights and was not prejudicial so as to deny him a fair trial.

Crane's reliance upon *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), is misplaced. That case held that the Eighth Amendment to the U.S. Constitution prohibits the imposition of a death sentence by a jury that has been led to the false belief that the responsibility of determining the appropriateness of the defendant's capital sentence rests elsewhere. Even in a death penalty case, the prosecutor's brief reference to the possibility of reversal on appeal was not a *Caldwell* violation. *Guinan v. Armontrout,* 909 F.2d 1224, 1233 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991).

■■■■ We have previously held that an isolated improper comment which was not intended to violate the constitutional right of the defendant or to inject a factually false allegation would be harmless error. RCr 9.24; *Charles v. Commonwealth,* Ky., 634 S.W.2d 407 (1982); *Abernathy v. Commonwealth,* 439 S.W.2d 949 (1969). Here the very brief reference to the fact that the appellant had pursued an appeal from a juvenile adjudication was not unduly prejudicial.

The judgment of conviction and sentence of the Jefferson Circuit Court is affirmed.

STEPHENS, C.J., and LAMBERT and WINTERSHEIMER, JJ., concur in this opinion.

LEIBSON, J., dissents by separate opinion in which COMBS, J., concurs.

REYNOLDS, J., joins this dissent as to Issues I and II.

LEIBSON, Justice, dissenting.

Respectfully, I dissent, for three reasons:

I. HEARSAY USE OF POWELL'S OUT–OF–COURT STATEMENT TO IMPEACH CRANE'S IN–COURT TESTIMONY THAT POWELL RATHER THAN CRANE SHOT THE JOGGER

This case differs from the non-hearsay use of a nontestifying confederate's confes-

sion permitted in *Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), which is the principal authority relied upon in the Majority Opinion. It may well be that who shot the jogger was a collateral issue because it was what happened on a different occasion, but a collateral issue, where relevant, is proved the same as any other issue, with due regard for the law of hearsay.

This was an issue injected into the case by the Commonwealth rather than the appellant when the Commonwealth introduced all of Crane's pretrial statement including this uncharged crime. Crane had a right to take the stand and contradict any portion of that alleged confession, and the Commonwealth should have been limited to using admissible evidence when rebutting facts in Crane's testimony. The statement Powell gave the police is hearsay: it was introduced for its truth, and not for some non-hearsay purpose. Thus this was a different use and a different case from *Tennessee v. Street, supra*, cited in the Majority Opinion.

As stated in the Majority Opinion "the Commonwealth moved the trial court . . . to admit Powell's previous statement under Federal Rule of Evidence (FRE) 804(b)(3) . . . as a statement against penal interest." This is the real issue we needed to confront on this appeal with respect to the admissibility of Powell's statement, and not whether the statement had a nonhearsay use. The Majority Opinion fails to address whether this exception to the hearsay rule should apply here, but it hardly seems reasonable to argue that the portion of Powell's statement wherein he says Crane shot the jogger is anything but self-serving hearsay. See *Taylor v. Commonwealth*, Ky., 821 S.W.2d 72, 77 (1991), Leibson, J., dissenting.

## II. ERROR IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF SECOND-DEGREE MANSLAUGHTER

If, as the Majority Opinion states, the "appellant's pretrial statement does *not* establish that he was not shooting at the store clerk," meaning (I presume) that fairly read Crane was saying that he intended to shoot *at* the store clerk, then the trial court erred in instructing on any degree of wanton homicide, including wanton murder; in this scenario the only evidence was of intentional homicide. If, on the other hand, Crane's statement should be construed as claiming that he did not intentionally shoot at the store clerk, but instead "shot the gun up in the air," then surely there is a jury issue as to whether shooting "up in the air" manifested extreme indifference to human life, and Crane was then entitled, as he claims, to a wanton manslaughter instruction. The Commonwealth cannot have it both ways.

The wanton endangerment case which the Majority cites, *Combs v. Commonwealth*, Ky., 652 S.W.2d 859 (1983), is inapposite. Combs was shooting in the direction of people, rather than up in the air. Shooting in the direction of people whom you do not hit, is wanton endangerment. But shooting in the direction of a person whom you hit, is intentional murder, rather than wanton murder.

The trial court probably would have been correct to leave the "wanton" portion out of the murder instruction (*Shannon v. Commonwealth*, Ky., 767 S.W.2d 548 (1988)), but surely it was incorrect to charge wanton murder on the basis that Crane was "shooting at the store clerk" rather than shooting the gun up in the air. On the other hand, if Crane's intent was to shoot up in the air, rather than at the store clerk, the proper charge was wanton manslaughter, and, at the least, failure to permit the jury to consider it was reversible error.

## III. THE TRIAL COURT'S FAILURE TO RECUSE AT THE SECOND TRIAL

If the judge said at the sentencing after the first trial, as is claimed, that "he would impose the death penalty on the appellant if he could, but that the law did not allow him to do so," surely this implies bias and the trial judge should have then recused himself from the second trial. Perhaps,

the trial judge could make such a statement and not be biased, but at the least it has such a strong appearance of bias that the judge should have recused himself before the second trial.

The trial judge's statement that "he did not recall making the alleged statement" suggests that he was not denying it. We have on the one hand an affidavit that the statement was made, and on the other hand a statement that the trial judge "could not see himself making the statement attributed to him." This is too much of an appearance of bias for this Court to tolerate, especially in a case with the checkered history of this one, wherein the decision of the trial court was questioned in a unanimous U.S. Supreme Court decision (*Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)), and we have been twice appealed and reversed in federal courts: one time for approving the trial court's conduct of the trial, and, after the U.S. Supreme Court reversed us, a second time for declaring the trial court's error "harmless."

This was a case where the trial judge should have recused himself to avoid the appearance of bias even if he was not consciously aware of bias.

COMBS, J., joins this dissent.

REYNOLDS, J., joins this dissent as to Issues I and II.