DECISION AND JUDGMENT ENTRY
Christopher Wright appeals the jury verdict and convictions entered against him in the Scioto County Court of Common Pleas for murder and attempted murder. Wright asserts that the trial court erred in failing to instruct the jury on involuntary manslaughter and reckless homicide as lesser-included offenses of murder. Because the record contains evidence that would reasonably allow a jury to reject a finding that Wright purposely killed his victim and instead find that he merely perversely disregarded a known risk that his actions would cause someone's death, we agree that the trial court erred in failing to instruct the jury on reckless homicide. Wright also asserts that the trial court erred in permitting the jury to view a videotape of his statement to police because the tape contains prejudicial references to Wright's involvement in other crimes or misconduct. However, since the videotape actually only implicates others in the misconduct, and because the misconduct referred to in the videotape is relevant to Wright's motive and intent, we disagree. Finally, Wright asserts that he did not receive effective assistance of counsel. Since Wright's trial counsel provided him with reasonable professional assistance, we disagree. Accordingly, we affirm in part and reverse in part the judgment of the trial court.
 I.
The Scioto County Grand Jury indicted Wright for murder, in violation of R.C. 2903.02(A), and for attempted murder, in violation of R.C.2903.02(A) and 2923.02. Both charges carried firearm specifications pursuant to R.C. 2941.145. Wright pled not guilty to the charges, and the court conducted a jury trial.
At trial, Wright admitted that he borrowed his grandmother's gun, without her knowledge, on February 3, 2001. Sometime later that day, he visited the home of his uncle, Phil Webb. At that time, Webb's children, wife, mother, and several family friends, including David Rickey, Jr., and Wylie Binns, were at the Webb home. The record contains evidence that Webb's wife and his mother were the only people present who were not intoxicated from snorting crushed Xanax and Lorcet tablets.
When Wright arrived, he went onto the front porch and showed his grandmother's gun to Webb's son, Justin, and Justin's friend Zach. Justin and Zach both testified that Wright "pulled" the gun on them and threatened to rob them, but withdrew the threat after Justin reminded Wright that he shouldn't treat his family that way. All three went into the house. Justin told his stepmother, Loretta Webb, about the incident, but asked Loretta not to tell his father because he was afraid his father would be angry with Wright. However, Loretta immediately went into the garage and told Webb that Wright had a gun.
Webb called Wright into the garage for a brief conversation. According to Wright, Webb stated that Rickey had pulled a gun on Justin, and that he wanted to confront Rickey on the front porch. Webb allegedly wanted Wright to "watch his back" and step in if Rickey started to "get the better of him." Wright did not correct Webb regarding the fact that he, not Rickey, had the gun that Justin saw. Instead, Wright agreed to watch Webb's back while Webb confronted Rickey.
Wright exited the garage through the outside door, and proceeded to walk toward the front porch in the alley adjacent to Webb's house. Webb reentered the house and asked Rickey to step onto the front porch, and Rickey complied. Loretta testified that she followed Rickey and Webb and stood in the front doorway. Wylie Binns testified that he also went onto the front porch.
Webb and Rickey began to argue, and Webb pushed Rickey off the porch while accusing Rickey of pulling a gun on Justin. Webb then jumped off the porch with a brick in his hand, poised to strike Rickey. Rickey saw Wright walking down the alley with a gun drawn.
Next, Wright fired between four and six shots. Webb fell to the ground. Rickey put his hands up and rolled on the ground, trying to dodge the bullets. Loretta and Binns looked over and saw Wright standing in the alley as he fired the gun. Loretta testified that Wright was aiming at Webb and Rickey, while Binns testified that Wright was aiming toward the embankment where the alley and yard meet. Loretta, Rickey and Binns all stated that they could see Wright clearly and that Wright was standing close to Webb and Rickey, though their estimates of the distance ranged from two or three feet to fifteen or twenty feet. After Wright fired the shots, he ran down the alley.
One shot grazed Webb's forehead. Another hit Webb between the eyes and traveled straight through to the back of his head, killing him. Rickey received only minor wounds when a bullet or bullets grazed his hand and abdomen. No one else was injured. However, one shot went through the living room window and lodged in the wall of the house across the street from Webb's residence.
A few hours later, police located Wright at his mother's boyfriend's home. They read Wright his Miranda rights, and Wright agreed to submit to a videotaped police interview. Just prior to the interview, Wright reportedly dozed off in the hallway outside the interview room.
The state offered the videotape as evidence and sought to play it for the jury. Wright objected, claiming that his level of intoxication, use of profanity, and the discussion of other crimes in the videotape made it unduly prejudicial. The court determined that the state had a right to show the video, but offered a limiting instruction immediately following the video regarding the fact that the jury should not consider crimes mentioned in the video other than the murder and attempted murder.
During the taped interview, Wright denied firing or even having a gun in his possession prior to Webb's death. Wright stated that he believed Rickey shot Webb. Wright denied being angry or having problems with Webb or Rickey. Wright acknowledged that he had some problems with Rickey in the past regarding a stolen gun. However, while denying any involvement in the theft of weapons, Wright stated that he had resolved his differences with Rickey.
Additionally, Wright stated in the interview that he felt he had "sobered up" at that point. Wright admitted that he had been drinking alcohol and snorting pain pills throughout the day, and that he could not remember everything that happened earlier that evening as a result. Wright appeared coherent and alert during the interview, though he claimed at trial that he was so intoxicated that he did not even recall speaking with the detectives.
At trial, Wright admitted to both having and firing his grandmother's gun outside Webb's home. However, Wright maintained that he only shot warning shots toward the embankment that he thought would scare Webb and Rickey. Additionally, Wright stated that he could not clearly see whom he was firing at because it was dark in the alley and yard. On cross-examination Wright admitted that, based on the differences in the elevation of the alley relative to the embankment and the yard, it was possible that the shots he fired hit Webb and Rickey.
The state's exhibits included a box of .22 caliber long Remington bullets that the Portsmouth Police Department obtained from Wright's grandmother, the bullet recovered from Webb's head in the autopsy, and the bullet that lodged in Webb's neighbor's wall. The state's expert testified that the two bullets recovered from the crime scene, like the bullets belonging to Wright's grandmother, were .22 caliber long Remingtons.
Wright requested that the trial court instruct the jury not only on murder, but also on the lesser-included offenses of involuntary manslaughter and reckless homicide. The trial court denied his request, finding that Wright's testimony was self-serving, and that the evidence in the record supported a finding that he purposefully killed Webb.
The jury found Wright guilty of both murder and attempted murder, and guilty of both accompanying firearm specifications. The court sentenced Wright accordingly. Wright timely appeals, asserting the following assignments of error:
 I. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF INVOLUNTARY MANSLAUGHTER AND RECKLESS HOMICIDE.
 II. THE TRIAL COURT ERRED IN ALLOWING THE VIDEOTAPE OF APPELLANT, WHICH IT ACKNOWLEDGED IN ADVANCE TO CONTAIN UNDULY PREJUDICIAL OTHER ACTS AND UNCHARGED MISCONDUCT, TO BE PLAYED TO THE JURY WITHOUT REDACTION.
 III. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARITCLE 1, SECTIONS 2 AND 10 OF THE OHIO CONSTITUTION.
 III.
In his first assignment of error, Wright contends that the trial court erred in failing to instruct the jury on the lesser-included offenses of involuntary manslaughter and reckless homicide with regard to his murder conviction. Wright asserts that evidence in the record supports his contention that he did not intend to kill Webb when he fired his grandmother's gun toward him. Thus, Wright contends that the evidence presented would reasonably support both an acquittal on the charge, and a conviction upon the lesser-included offenses of involuntary manslaughter or reckless homicide. Wright argues that the trial court's denial of his request for the lesser-included offenses' instructions effectively denied him the full benefit of the "beyond a reasonable doubt" instruction, thus depriving him of due process.
In reviewing a trial court's decision regarding whether to give a jury instruction on a lesser-included offense, we employ a two-tiered analysis. First, we must determine whether the offense for which the instruction is requested is a lesser-included offense of the charged offense. To do so, we must assess whether "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
If the Deem test is met, we then examine whether the record contains evidentiary support upon which a jury could reasonably acquit the defendant of the greater offense and convict him on the lesser offense. The trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on the lesser-included offense, and we will not reverse that determination absent an abuse of discretion. See State v. Endicott (1994),99 Ohio App.3d 688, 693; U.S. v. Ursary (1997), 109 F.3d 1129; see, also, State v. Davis (1992), 81 Ohio App.3d 706, 714.
The state does not dispute that reckless homicide and involuntary manslaughter are lesser-included offenses of murder under Ohio law. A person commits murder when he purposefully causes the death of another. R.C. 2903.02(A). A person commits reckless homicide when he recklessly causes the death of another. R.C. 2903.041(A).[2] A person commits involuntary manslaughter when he causes the death of another as a proximate result of committing or attempting to commit a felony or misdemeanor. R.C. 2903.04. As the state concedes, the difference between the three crimes is the offender's intent (see State v. Jenkins (1984),15 Ohio St.3d 164), and thus both reckless homicide and involuntary manslaughter are lesser-included offenses of murder. See State v. Thomas
(1988), 40 Ohio St.3d 213, paragraph one of the syllabus, and State v.Kidder (1987), 32 Ohio St.3d 279, 282 (regarding Ohio's involuntary manslaughter statute); Wright v. Indiana (Ind. 1995), 658 N.E.2d 563
(regarding Indiana's reckless homicide statute); Tennessee v. Ely (Tenn. 2001), 48 S.W.3d 710 (regarding Tennessee's reckless homicide statute.)
The state contends that the trial court did not err in refusing to instruct on reckless homicide and involuntary manslaughter based on the evidence in this case. A trial court is required to instruct the jury on a lesser-included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Thomas at paragraph two of the syllabus. The evidence advanced by the defense must be sufficient to allow the jury to reasonably reject the greater offense; a lesser-included offense instruction is not warranted every time some evidence is presented on the lesser offense. State v. Shane (1992),63 Ohio St.3d 630, 632. The court must view the evidence in the light most favorable to the defendant when deciding whether to give a lesser included offense instruction. State v. Campbell (1994), 69 Ohio St.3d 38,48.
A defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction. SeeCampbell at 48; Thomas at 217-218; State v. Rawlins (Dec. 24, 1998), Scioto App. No. 97CA2539, unreported. Even though the defendant's own testimony may constitute some evidence supporting a lesser offense, if the evidence on whole does not reasonably support an acquittal on the murder offense and a conviction on a lesser offense, the court should not instruct on the lesser offense. Campbell, 69 Ohio St.3d at 47; Shane,63 Ohio St.3d 632-633. "To require an instruction * * * every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." Shane at 633.
Ohio courts have often been called upon to examine factual scenarios and assess whether an instruction on involuntary manslaughter is required for a defendant charged with purposefully killing another. In Rawlins,
the defendant claimed that he did not intend to kill his victim. He testified that he shot aimlessly at his victim's trailer only to prove his masculinity to the victim. The defendant further testified that he was looking at the ground and could not see the victim as he fired his weapon.
In concluding that the trial court did not err in refusing to give an instruction on involuntary manslaughter, we determined that the evidence presented did not reasonably support a conclusion that the defendant did not intend to kill his victim. Specifically, the fact that the defendant fired at close range, with pinpoint accuracy (hitting the victim with three of three shots), toward a known inhabited area (through the glass door where the victim was standing), belied the defendant's assertion that he did not intend to kill his victim. Likewise, in Campbell, the Supreme Court of Ohio determined that the number (four) and location (vital areas) of the victim's wounds refuted the defendant's contention that he did not intend to kill his victim, but stabbed him "reflexively."Campbell, 69 Ohio St.3d at 48. Thus, the Supreme Court of Ohio concluded that the trial court did not err in refusing to instruct the jury on involuntary manslaughter.
Due to the novelty of the reckless homicide statute in this state, we are not aware of any instance in which an Ohio court has examined whether a particular evidentiary scenario requires an instruction on reckless homicide as a lesser-included offense of murder. Therefore, we look to statutory definitions and analogous statutes and case law in Ohio and other jurisdictions for guidance.
Pursuant to R.C. 2901.22(A), "[a] person acts purposely when it is his specific intention to cause a certain result * * *." R.C. 2901.22(C) provides that "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." Generally, courts presume that people intend the natural, reasonable and probable consequences of their voluntary actions. State v. Williams (1996), 74 Ohio St.3d 569, 574; Thomas at 217. The fact-finder may deduce a "purposeful" intent to kill from several factors, including the type of instrument used to produce death, its tendency to destroy life, and the manner of inflicting the fatal wound. State v. Stallings (2000), 89 Ohio St.3d 280, 290 . Because a firearm is likely to cause death, a jury may infer a purposeful intent to kill from use of a firearm. State v. Shue (1994), 97 Ohio App.3d 459,466; see, also, Thomas at 217; State v. Stoudemire (1997),118 Ohio App.3d 752. However, no irrebuttable presumption exists that requires the jury to infer purpose to kill from the use of a deadly weapon. State v. Osburn (1976), 52 Ohio App.2d 146, 149.
In Young v. Indiana (Ind. 1998), 699 N.E.2d 252, the defendant fired a gun aimlessly into a crowd of people gathered in the victim's front yard as he drove past. Several witnesses testified that the defendant did not appear to be aiming at anything in particular as he fired. Nonetheless, one bullet struck the victim in the back of the head, killing him. Only two of the approximately six bullets the defendant fired were recovered; one from the victim, and the other at a significant distance away in the wall of the house next door. The trial court denied the defendant's request for jury instructions on involuntary manslaughter and reckless homicide, and the jury found him guilty of murder.
The Indiana Supreme Court found that the trial court did not err in refusing to instruct the jury on involuntary manslaughter, but erred in refusing to give the requested instruction on reckless homicide. In ruling that the jury could have reasonably concluded that the defendant did not intend to kill the victim, the court noted that the evidence included eyewitness testimony that the defendant did not appear to be aiming his weapon at any specific person, testimony that the defendant and the victim were known to be friendly with each other and were not known to have problems, and evidence of the location of the bullets which, based upon the distance between them, could support an inference that the defendant fired randomly or aimlessly. Thus, while concluding that the defendant acted with "`plain, conscious, and unjustifiable disregard'" of the fact that he may take a life by firing his gun toward a group of people, the court further concluded that, "given the specific facts of this case, a jury might reasonably decide that such behavior did not reflect a knowing killing." Young at 257. See, also, Tennessee v.Ely (Tenn. 2001), 48 S.W.3d 710, 725 (reckless homicide instruction required where record contained evidence that the defendant did not intend to kill his victim.)
In contrast, in Crane v. Kentucky (Ky. 1992), 833 S.W.2d 813, the defendant claimed that he did not intend to shoot his victim, a liquor store clerk who died from a single gunshot wound to the back of the head during a robbery. The defendant testified that the force of the discharge from his gun caused his hand to jerk up as he fired his weapon in an effort to scare the clerk, who had just tripped a security alarm with his foot. He maintained that he shot straight up into the air, not across the counter and into the clerk's head. The Supreme Court of Kentucky found no error in the trial court's refusal to instruct the jury on reckless homicide, holding that "[c]ontrary to appellant's statement, the location of the gunshot wound and the path of the bullet do not support any inference that appellant was shooting `straight up in the air.'"833 S.W.2d 813, 817. Likewise, in Dearman v. Indiana (Ind. 2001),743 N.E.2d 757, the court found that, despite the defendant's testimony that he did not intend to kill his victim, no serious evidentiary dispute as to his intent existed when the defendant had struck the victim in the head with a thirty-four pound concrete block.
The evidence in this case, even when construed in Wright's favor, shows that Wright used an instrument known to produce death, a gun. He fired the gun while standing in a known inhabited area in the general direction of two unprotected people from a distance of only two to twenty feet. In his testimony Wright admitted, based on his position in the alley relative to Webb and Rickey's positions in the yard, that "it was possible" that the bullets he fired hit Webb and Rickey. Bullets matching those from Wright's grandmother's gun struck Webb in a vital area, entering his skull in a straight line trajectory between his eyes.
The evidence also includes Wright's testimony that he only intended to break up the fight between Webb and Rickey and did not intend to shoot or kill anyone. Wright testified that he could not see Webb or Rickey clearly, and that he thought he was aiming at an embankment when he fired the gun. Additionally, Binns testified that he saw Wright firing his gun. It appeared to Binns that Wright was firing toward the embankment and was not aiming at anyone. Binns believed that Wright was trying to break up the fight rather than trying to shoot anyone. Police recovered only two of the four to six bullets Wright fired; the one that killed Webb and the one that lodged in the wall of the house across the street. Wright testified that he considered Webb a role model and a friend.
We find that, even when construing all the evidence in Wright's favor, his act of firing a weapon in an inhabited area demonstrated at minimum a perverse disregard of a known risk that someone would be shot and killed as a result. Thus, we find no abuse of discretion in the trial court's refusal to instruct the jury on involuntary manslaughter. Yet, given the specific facts of this case, we believe that a jury might reasonably conclude that Wright's behavior did not reflect a purposeful killing.
In denying Wright's request for a reckless homicide instruction, the trial court found that Wright's testimony was self-serving. However, this was not a case in which the defendant's own testimony was the only evidence of a lesser intent. Cf. Campbell, 69 Ohio St.3d at 48. An independent witness, Binns, supported Wright's testimony. Additionally, the distance between the recovered bullets and the fact that two to four bullets were never recovered may support an inference that Wright's shots were not directed at Webb and Riley. Thus, the record contains testimony and physical evidence from which a jury could reasonably conclude that Wright acted recklessly, but not purposely.
While we may believe that Loretta Webb's testimony is more persuasive than Binns' and Wright's, and we may draw different conclusions from the physical evidence, it is the jury's prerogative to decide questions of fact. Thus, by denying Wright's requested reckless homicide instruction in the face of evidence that would reasonably allow the jury to reject a finding that Wright purposely killed Webb and instead find that Wright merely perversely disregarded a known risk, the trial court abused its discretion. Therefore, Wright is entitled to a new trial on the murder charge. See Thomas at 220, fn. 7, citing Keeble v. United States (1973),412 U.S. 205, 213.
 B.
In one sentence at the end of his argument on his first assignment of error, Wright asserts that the court should have instructed the jury on felonious assault as a lesser-included offense of attempted murder. Wright concedes that he did not request a felonious assault instruction in the trial court, and he did not mention attempted murder or felonious assault in his assignments of error. However, in his reply to the state's brief, Wright asserts that his argument regarding the trial court's failure to give a reckless homicide instruction on the murder charge also applies to the court's failure to give a felonious assault instruction on the attempted murder charge.
We need not address issues not raised within an appellant's assignments of error. See App.R. 12(A)(2) and 16(A); Haddox v. Shell Chem. Co. (2000), 139 Ohio App.3d 454, 458, fn. 1; Gibbs v. Greenfield ExemptedVillage Sch. Bd. of Edn. (Dec. 24, 2001), Highland App. No. 01CA8, unreported. Moreover, the failure to cite caselaw or statutes in support of an argument as required by App.R. 16(A)(7) is grounds to disregard an assignment of error pursuant to App.R. 12(A)(2). See Meerhoff v.Huntington Mtge. Co. (1995), 103 Ohio App.3d 164, 169.
The issue of whether felonious assault is a lesser-included offense of attempted murder, as determined by application of the Deem test set forth above, is far from settled. See State v. Williams (1998),81 Ohio St.3d 1262, 1263 (Cook, J., dissenting) (noting that a conflict exists among the appellate courts and opining that felonious assault is not a lesser-included offense of attempted murder); State v. Nelson
(1996), 122 Ohio App.3d 309 (holding that felonious assault is not a lesser-included offense of attempted murder); State v. Marks (Feb. 17, 1987), Athens App. No. 1252, unreported (holding that felonious assault is a lesser-included offense of attempted murder); Committee Comment to R.C. 2903.11 (stating that felonious assault is a lesser-included offense of attempted murder.) Wright did not brief or even raise the application of Deem in his brief.
Based on Wright's failure to raise an assignment of error regarding felonious assault, coupled with his failure to brief the issue and cite relevant authority, we find that he waived his right to command our review of the jury instructions on the attempted murder charge. Thus, we decline to review the jury instructions on the attempted murder charge on the authority of App.R. 12(A)(2) and 16(A).
 C.
In sum, we find that the trial court did not abuse its discretion in refusing to instruct the jury on involuntary manslaughter as a lesser-included offense of murder. However, the trial court abused its discretion in refusing to instruct the jury on reckless homicide as a lesser-included offense of murder. We decline to review whether the trial court erred in failing to sua sponte instruct the jury on felonious assault as a lesser-included offense of attempted murder. Accordingly, we sustain in part and overrule in part Wright's first assignment of error.
 III.
In his second assignment of error, Wright contends that the trial court erred in allowing the state to play the videotape of his police interrogation, because the tape mentioned unduly prejudicial other acts. Wright objects to those portions of the videotape in which detectives question Wright about a robbery and some stolen guns. Specifically, Wright asserts that the trial court erred in failing to redact the following statements by the interrogating officer:
 Phil [Webb] ripped you off for some guns. JR [Rickey] ripped you off for some guns. * * * What about the shotgun you sold to the Arthur's boy that you stashed, stashed up at Michael Tyler's for [a] while? * * * Phil [Webb] sold the guns and you all didn't get squat out of it. He ripped you all off.
Wright contends that this constitutes character evidence that the trial court impermissibly permitted the jury to hear. Wright further argues that the trial court's subsequent admonition to the jury to disregard references made to stolen property in the tape was insufficient to remedy the prejudice caused by those references.
A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968),390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
Due to its highly prejudicial nature, evidence of a person's character is not admissible to prove that he acted in conformity with his character on a particular occasion. Evid.R. 404(A). Additionally, pursuant to common law, the state cannot introduce evidence of a defendant's alleged other crimes, wrongs or acts to illustrate the defendant's poor character. Evid.R. 404(B); State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. Such evidence is especially prejudicial when offered to attack the character for truthfulness of any witness, including the defendant. Evid.R. 608(B).
However, evidence of a defendant's prior conduct is admissible when offered to prove the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Further, evidence that tends to show the defendant's motive, intent, absence of mistake or accident, or scheme, plan or system is admissible "notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C.2945.59; State v. Greer (1981), 66 Ohio St.2d 139. Though these exceptions must be construed against admissibility, "[i]f the other act does in fact `tend to show' by substantial proof any of those things enumerated, * * * then evidence of the other act may be admissible."Broom at paragraph one of the syllabus.
The state notes that the statements that Wright objects to deal with Webb's acts and misconduct, not Wright's. Moreover, the state notes that even if that the videotape did contain evidence of Wright's acts or misconduct that reflect negatively on his character, the state's introduction of that evidence would be permissible pursuant to Evid.R. 404(B). After reviewing the videotape, we agree. The videotape indicates that Wright knew about some stolen guns, but primarily focuses on the involvement of Webb, Rickey and others with the guns. Additionally, the interrogating detective's line of questions is clearly targeted to determining whether Wright was angry with, and thereby motivated to kill, Webb. Thus, the trial court properly permitted the tape to be introduced as proof of Wright's motive and intent when he shot and killed Webb.
The trial court did not abuse its discretion in permitting the state to play the videotape for the jury. Accordingly, we overrule Wright's second assignment of error.
 IV.
In his third assignment of error, Wright contends that he did not receive effective assistance of counsel. Wright asserts that his trial counsel should have moved to suppress the videotape in its entirety on the grounds that Wright did not knowingly, voluntarily and intelligently waive his Miranda rights prior to the interview. Additionally, Wright contends that his counsel erred in the manner in which he objected to the content of the videotape. Counsel moved to suppress the entire videotape on the grounds that it contained inadmissible character evidence, but did not move to redact only the objectionable portions of the videotape. Finally, Wright asserts that his counsel did not provide reasonable professional assistance when counsel failed to object contemporaneously to statements made on the videotape.
In reviewing a case for ineffective assistance of counsel, we apply the following test:
Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v.Ballew (1996), 76 Ohio St.3d 244, 255, citing Strickland v. Washington
(1984), 466 U.S. 668, 687.
As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. Counsel's failure to assert a meritless claim does not constitute ineffective assistance of counsel. State v. Nitenson (Feb. 24, 1994), Highland App. No. 91CA796, citing Thomas v. United States (8th Cir. 1991), 951 F.2d 902, 905. Thus, the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made. State v.Blagajevic (1985), 21 Ohio App.3d 297, 299-300.
Waiver of the Fifth Amendment right not to incriminate oneself must be made "voluntarily, knowingly and intelligently." Miranda v. Arizona
(1966), 384 U.S. 436, 444. Absent evidence that coercive police conduct overcame a defendant's will and critically impaired his capacity for self-determination, we presume that a defendant's decision to waive hisFifth Amendment privilege was voluntary. State v. Dailey (1990),53 Ohio St.3d 88, 91-92. To determine whether a waiver was voluntary, the court must consider the totality of the circumstances and look specifically at the defendant's age, mentality, and prior criminal experience; the length, intensity, and frequency of the interrogation; and the existence of physical deprivation or mistreatment; and the existence of any threat or inducement. State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus, vacated as to death penalty (1978), 438 U.S. 911. Evidence that the defendant signed a written waiver of his rights raises a strong presumption that the waiver is valid. State v. Dennis (1997), 79 Ohio St.3d 421, 425.
In this case, Wright signed a written waiver of his Fifth Amendment rights. Officer Pat Hutchens testified that Wright understood his rights when he signed the waiver. The record does not contain any evidence of police coercion. During the videotaped interview, Wright states that he was intoxicated when the police picked him up, but that he feels sober during the interview. Thus, Wright's trial counsel might have reasonably believed that it would have been futile to file a motion to suppress the videotape based upon Wright's alleged intoxication at the time of his waiver. Trial counsel's failure to file a futile motion does not place his performance outside the range of reasonable professional assistance.
Likewise, counsel's failure to seek redaction of the videotape may be considered sound trial strategy. As noted above, the majority of the conversation on the videotape regarding stolen guns implicates Webb, Rickey, and others. Redacting those portions of the interview may well have left the jury wondering, and thinking the worst, about what Wright wanted to hide from them. Similarly, objecting to all statements about stolen guns contemporaneously with the videotape may have called undue attention to those statements from the two-and-one-half hour videotape. An objection on character evidence grounds to an ambiguous statement about Wright's involvement with stolen guns may have appeared to the jurors to be an admission that he did steal guns. Thus, Wright's trial counsel engaged in sound trial strategy by downplaying the videotape and its references to stolen weapons.
We find that Wright's trial counsel did not exhibit deficient performance. Rather, his performance fell within the wide range of reasonable professional assistance. Therefore, we overrule Wright's third assignment of error.
 V.
In conclusion, we affirm the judgment of the trial court with regard to Wright's conviction for attempted murder (?). We find that the trial court did not err in permitting the state to play Wright's videotaped interview for the jury. Wright received effective assistance of counsel in the trial court. The trial court did not abuse its discretion in refusing to instruct the jury on involuntary manslaughter. However, because the record contained evidence that Wright did not intentionally kill Webb, the trial court abused its discretion when it refused to instruct the jury on reckless homicide as a lesser-included offense of murder.
Accordingly, we sustain Wright's first assignment of error in part and we overrule Wright's first assignment of error in part, as well as his second and third assignments of error. We remand this case for a new trial on the murder charge only.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED IN PART AND AFFIRMED IN PART, and the cause remanded to the trial court for proceedings consistent with this opinion, and Appellant and Appellee to split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment Opinion A/E II III; Dissent with attached Dissenting Opinion A/E I.
Evans, J.: Concurs in Judgment Opinion.
[2] R.C. 2903.041 became effective September 29, 1999.